UNITED STATES of America,
Plaintiff–Appellee,

v.

Jesus Antonio PARTIDA–PARRA,
Defendant–Appellant.

No. 87–5295.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 3, 1988.

Decided Sept. 20, 1988.

D. Steven McEvers, Newport Beach, Cal., for defendant-appellant.

Larry A. Burns, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before HUG, FLETCHER and FARRIS, Circuit Judges.

FLETCHER, Circuit Judge:

Jesus Antonio Partida–Parra appeals his conviction on four counts relating to heroin distribution and weapons possession. Partida–Parra claims that the district court abused its discretion by setting aside his guilty plea to a lesser charge of misdemeanor possession after the plea had been accepted by the court.

## FACTS

On December 17, 1986, Partida–Parra was indicted for possession and conspiracy to possess heroin with intent to distribute, 21 U.S.C. §§ 841(a)(1), 846 and for using and carrying a firearm during a drug trafficking crime, 18 U.S.C. § 924(c). These charges cumulatively carried a mandatory minimum sentence of ten years and a maximum of 45.

During initial plea negotiations, Partida–Parra's counsel, George Siddell, indicated that his client would only plead guilty to a misdemeanor, so as not to destroy his eligibility for immigration amnesty. However, Assistant U.S. Attorney Larry Burns maintained that he would only accept a plea to a felony.

On February 2, 1987, Siddell discussed a plea agreement with AUSA Phillip Halpern, who was standing in for Burns. Apparently, a plea agreement was reached. The same day, Halpern prepared, and Burns signed, an information superseding the original indictment and charging Partida–Parra with misdemeanor possession of

heroin in violation of 21 U.S.C. § 844. On February 9, Halpern appeared at the trial-setting hearing and filed the superseding information, and Partida–Parra entered a plea of guilty to the misdemeanor. The court accepted the plea, pursuant to Rule 11.

On March 23, Burns telephoned Siddell and informed him that the superseding information contained a "clerical" error: the correct charge was not supposed to be 21 U.S.C. § 844, a misdemeanor, but 21 U.S.C. § 841, the felony possession section.[1] The next day, Burns wrote to the court that the defendant had been erroneously permitted to plead to a misdemeanor and indicated that the government would move to set aside the misdemeanor guilty plea.

On April 20, the court held a brief hearing and granted the government's motion to set aside the misdemeanor guilty plea. The court reinstated Partida–Parra's plea of not guilty to the charges in the original indictment and set the case for jury trial. The trial was held on May 19–20, and Partida–Parra was convicted on all counts. He was sentenced to a total of ten years imprisonment.

## DISCUSSION

### I. *Court's Authority to Vacate the Plea*

Both parties and the district court assume that a district court has discretion to vacate a guilty plea on the government's motion even though the court has accepted the plea and the defendant has not breached his part of the agreement. However, the basis for that authority is unclear. The possible bases are 1) the Federal Rules of Criminal Procedure and 2) the "common law" of plea agreements.

### A. Authority under the federal rules

■ The procedure for plea agreements, set forth in Fed.R.Crim.P. 11(e), provides in

relevant part for negotiated plea agreements in which the defendant offers to plead guilty "to a charged offense or to a lesser related offense" in return for the government's promise to "move for dismissal of other charges ..." Fed.R.Crim.P. 11(e)(1)(A).[2] This agreement must be disclosed to the court at the time the plea is offered, at which time the court has three options: "the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report." Fed.R.Crim.P. 11(e)(2). In this case, the court unconditionally accepted the plea on February 9.

The Federal Rules allow the court to change its decision to accept a guilty plea under two circumstances. However, neither appears applicable here. Rule 11(f) states:

> Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

While this provision implies that acceptance of the guilty plea does not foreclose a subsequent rejection of the plea if factual questions emerge, for instance at sentencing, it cannot be read to authorize the court to vacate a plea on the basis of a discrepancy in the parties' understanding of the plea agreement. Having a "factual basis for the plea" means ascertaining "that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty." Advisory Committee Notes to 1966 Amendment; 8 *Moore's Fed Prac.* ¶ 11.07[1]; *see Santobello v. New York*, 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); *Salas v. United States*, 529 F.2d 1276, 1277 (9th Cir.1976) (per curiam). Thus, the "factual basis" does not

---

**1.** We note that a felony *cannot* be charged by information. Fed.R.Crim.P. 7(a). The charge of § 844, the misdemeanor, was appropriately charged by information. A superseding *indictment* would have been required for the § 841

charge that the government contends it intended.

**2.** The different types of plea agreements in Rule 11(e)(1)(B) & (C) are not applicable to this case.

refer to the plea negotiations or the parties' intent.

Rule 32(d) provides for a motion for withdrawal of a plea of guilty before imposition of sentence "upon a showing by *the defendant* of any fair and just reason." (Emphasis added.) Neither Rule 32(d) nor any other provision of the Federal Rules expressly contemplates government motions to set aside a plea.

We are aware of no case which has decided the issue before us: whether the trial court has the authority, on the government's motion, to set aside a guilty plea accepted by the court. However, related precedents suggest that the district court's authority under the Rules to revisit an accepted guilty plea is limited.

In *United States v. Cruz*, 709 F.2d 111 (1st Cir.1983), the defendant Cruz was indicted for cocaine trafficking in violation of 21 U.S.C. § 841(a)(1), and (as occurred in Partida–Parra's case) an information substituting for the indictment was filed, pursuant to a plea bargain, charging misdemeanor narcotics possession in violation of 21 U.S.C. § 844. The district court fully complied with Rule 11(c) (advice to defendant) and unconditionally accepted the plea bargain, which included a lenient sentence recommendation by the prosecutor. At sentencing, two months later, the court reversed itself by rejecting the plea bargain: the court found the misdemeanor charge and recommendation to be too lenient in light of the presentence report and the sentences received by Cruz's co-defendants. The case was set for trial on the original indictment, and Cruz filed an interlocutory appeal. The First Circuit reversed the district court and reinstated Cruz's guilty plea to the misdemeanor. "[O]nce the court accepted the agreement, thereby binding the defendant and prosecution, it could not simply change its mind on the basis of information in the presentence report, at least where that information revealed less than fraud on the court." *Id.* at 114–15.[3]

In *United States v. Blackwell*, 694 F.2d 1325 (D.C.Cir.1983), the district court, after accepting defendant's guilty plea pursuant to a plea agreement, warned the defendant that she could lose the benefit of her bargain if she gave certain testimony at her co-defendant's trial. In holding this to be an error in the co-defendant's trial, the court of appeals strictly construed "the straightforward language" of Rule 11:

... [O]nce the plea was accepted the judge no longer had discretion to repudiate the agreement because of Robinson's subsequent testimony.

... The plea and the bargain were sealed at that point, and we know of no authority for the judge, short of evidence of fraud, to change her mind as to the wisdom of the bargain and refuse to enforce it.

... Rule 11 appears to speak unequivocally; if the plea is accepted, the judge does not announce any deferral of that acceptance, and the defendant adheres to the terms of the bargain, all parties to it are bound. Although the rule does permit deferral of the decision to accept or reject the plea, usually for the purpose of viewing the presentence report, the mere postponement of the sentencing itself to a future date does not authorize the judge to remake or vacate the plea bargain for whatever reasons later seem appropriate to her.

694 F.2d at 1338–39 (footnotes omitted).

Although *Cruz* and *Blackwell* are distinguishable on their facts from this case, they do indicate that the district court is not authorized to go beyond the confines of Rule 11 in accepting or rejecting plea agreements. The only recognized exception to strict adherence to Rule 11 is for fraud on the court. *See, e.g., Cruz*, 709 F.2d at 114–15; *Blackwell*, 694 F.2d at 1338–39. The fraud exception is grounded in the court's inherent supervisory powers, which enable the court to preserve the integrity of the judicial process. *See United*

---

**3.** *Cruz* also held that the double jeopardy clause prohibited trial on the original indictment because jeopardy had attached when the trial court unconditionally accepted the guilty plea.

709 F.2d at 115–16. We find it unnecessary to reach the double jeopardy issue in this case and express no opinion about this aspect of *Cruz.*

*States v. Ramirez,* 710 F.2d 535, 540 (9th Cir.1983); *United States v. Cortina,* 630 F.2d 1207, 1214 (7th Cir.1980).

The government does not suggest that fraud is present in this case. Rather, it argues that a mistake of fact (on its part) prevented the formation of a binding agreement. We have found no authority that empowers the court to abrogate a plea agreement to relieve one party of its own mistake. While Rule 32(d) allows the defendant to move for withdrawal of a guilty plea for "any fair and just reason," neither that nor any other rule allows the government to make a similar motion. In sum, we conclude that the district court was without authority under the Federal Rules to vacate Partida–Parra's guilty plea.

**B. "Common law" authority**

The government and the dissent argue that, independent of the court's authority to vacate a guilty plea under the Federal Rules, the district court has the power to undo or "rescind" the parties' obligations under a plea agreement, a power which was properly invoked by the government in this case.

In the wake of the Supreme Court's official sanction of plea bargaining, *see Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *see also Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the federal courts have developed a "common law" of plea agreements around the notion that the negotiated guilty plea represents a bargained-for quid pro quo. Thus, we have stated that "a plea bargain is contractual in nature" and is subject to contract-law standards. *United States v. Read,* 778 F.2d 1437, 1441 (9th Cir.1985). Any dispute over the terms of the agreement must be resolved by determining, under an objective standard, "what the parties to the plea bargain reasonably understood to be the terms of the agreement." *Id.* (quoting *United States v. Arnett,* 628 F.2d 1162, 1164 (9th Cir.1979)).

While several cases have relied upon the contract analogy, they have done so within a limited range of fact patterns: specifically, appellate courts have been called upon to interpret the terms of plea agreements to determine whether one of the parties has breached. *See, e.g., Read,* 778 F.2d at 1441 (interpreting scope of government's promise to "take no position on what sentence should be imposed"); *Arnett,* 628 F.2d at 1164–65 (same); *United States v. Travis,* 735 F.2d 1129, 1132 (9th Cir.1984) (determining whether government breached promise to remain silent at sentencing); *United States v. Krasn,* 614 F.2d 1229, 1233 (9th Cir.1980) (interpreting whether plea bargain meant to provide blanket immunity from prosecution for uncharged offenses); *see also United States v. Reardon,* 787 F.2d 512, 516 (10th Cir.1986) (allowing government to revoke plea offer where defendant failed to fulfill his part of bargain).

The "contract" principles emerging from these cases are that courts will use objective canons of interpretation to construe plea agreements and will take some appropriate action where one party breaches the agreement. The cases suggest that courts have some remedial power to enforce plea bargains. Where the government breaches a plea bargain, it may be appropriate for the court to order "specific performance" of the bargain. *United States v. Herrera,* 640 F.2d 958, 960 (9th Cir.1981); 2 W. Lafave & J. Israel, *Criminal Procedure,* § 20.2, at 599 (1984) ("When the breach was a failure by the prosecutor to carry out a promise which was fulfillable, then certainly the defendant's request for specific performance should be honored."). In cases where the appropriate remedy is to allow the defendant to withdraw his guilty plea, the court is expressly authorized to do so under Rule 32(d).

On the other hand, where the defendant breaches the plea bargain, courts have found the government to be free from its obligations under the plea agreement. *See, e.g., United States v. Verrusio,* 803 F.2d 885, 887–89 (7th Cir.1986); *United States v. Reardon,* 787 F.2d at 516. The government and the dissent interpret these cases to mean that courts are empowered, by virtue of the plea-agreement/contract

analogy, to "rescind" plea agreements whenever one of the parties successfully interposes a valid contract defense.[4] It is not at all clear to us that these cases implicate a common law power of "rescission." However, we need not analyze the precise theoretical mechanism—whether "rescission" or something else—by which a court will, for example, allow a defendant who has breached his plea agreement to be reindicted. In this case, Partida–Parra did not breach his part of the agreement. Whatever "common law" powers a court may have to deal with breached plea agreements, we decline to extend those powers to cases where some "contract defense" other than breach is at issue.[5]

 Here, the government argues that the superseding indictment, although unambiguous on its face, reflects a "mistake of fact," such that there was no "meeting of the minds" between the parties. According to the government, a unilateral mistake of one party is a ground for relief from a contract where the other party "knew or had reason to know of the mistake." We do not believe that the plea-agreement/contract analogy extends so far as to allow the district court to revisit an accepted plea to reconsider whether the "contract" was formed (as distinct from considering whether it was breached). The contract analogy is imperfect. The formation of binding plea agreements is governed not by the Uniform Commercial Code, but by the Federal Rules of Criminal Procedure, which requires, among other things, that the court approve the plea agreement and find it to have a factual basis. Here, the defendant's plea of guilty was entered and accepted by the court in the presence of an Assistant U.S. Attorney (who had negotiated the plea and drafted the information). The information was valid on its face. Notwithstanding the government's subsequent position, there is nothing inherently unreasonable about a misdemeanor plea offer in this case. *Compare Cruz*, 709 F.2d at 111–12. If the substitute information was obviously mistaken, the AUSA could and should have objected at the time the plea was entered. According to the government, the oversight occurred due to a communication breakdown between the two prosecutors involved in the case. The government is entitled to no relief from its mistake in such circumstances. *See Santobello*, 404 U.S. at 262, 92 S.Ct. at 499 ("inadvertence" no excuse for prosecutor's breach of plea agreement, because "staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done").

### C. Conclusion

Once the district court had accepted the plea agreement in this case, it was without authority under the Federal Rules to undo the agreement and vacate the plea. Furthermore, this authority is not supplied by case law under which the government is released from its obligations in a plea agreement breached by the defendant. A district court that has accepted the plea is not entitled to go outside the Federal Rules and consider "contract defenses" to determine whether an agreement was made.

 We conclude that the district court erred by freeing the government from its obligation under the plea bargain in the absence of a breach by the defendant.[6]

---

4. This argument is slightly disingenuous. In actuality, given the court's power under Rule 32(d) to allow a defendant to withdraw his guilty plea "upon a showing ... of any fair and just reason," the question of a "common law" power of "rescission" would arise only when the *government* sought to interpose the contract defense.

5. Again, because we are here speaking of the court's "common law" authority, our statement does nothing to diminish the court's power under Rule 32.

6. Our holding does nothing to limit the court's power to undo a plea agreement in a case where the defendant has obtained the agreement through fraud or misrepresentation. *See Cruz*, 709 F.2d at 114–15; *Blackwell*, 694 F.2d at 1338–39.

The dissent makes too much of the distinction between "vacating" and "rescinding" a guilty plea. When the district court exercises its power under the Federal Rules to reject a plea agreement or permit a defendant to withdraw his plea, it is clear by implication that the parties are consequently released from their obli-

## II. *Remedy*

█ The government argues that, if we find the plea agreement binding, the government's action in seeking to vacate the plea is a breach of the agreement, for which the appropriate remedy is reinstatement of Partida–Parra's right to a jury trial. According to the government, a defendant is not entitled to specific performance even if the government breaches its plea agreement. This argument is meritless.[7] Were we to accept it, we would, in effect, allow the government, any time it might have second thoughts about a plea bargain, to breach the agreement by reindicting the defendant on the greater charges, thereby "restoring" the defendant's "right to trial" on those charges. Such a practice would, of course, render the government's plea-agreement obligations meaningless. Because the plea agreement was consummated, this court is in the position of undoing the district court's error rather than requiring performance by the government. The district court erred not only in vacating the guilty plea, but also in failing to hold the government to its obligation under the plea agreement. *See Santobello,* 404 U.S. at 262, 92 S.Ct. at 499 ("when a plea rests in any significant degree on a promise or agreement of the prosecutor, ... such promise must be fulfilled"). Had the court held the government to its bargain, the court would not have allowed Partida–Parra to be reindicted and tried.[8] The appropriate remedy is to reinstate the guilty plea and remand for resentencing. *See Cruz,* 709 F.2d at 115–16; *Blackwell,* 694 F.2d at 1337–38 n. 15.

REVERSED AND REMANDED.

FARRIS, Circuit Judge, dissenting:

Contrary to the majority's assertion, the distinction between the district court's power to rescind a plea agreement and its power to vacate a guilty plea is pivotal. The district court had power to rescind the agreement. After the court exercised that power, but before it vacated the plea, the defendant was subject to sentencing on the misdemeanor count *and* prosecution on the felony counts in the original indictment. The Double Jeopardy Clause did not bar the prosecution. Therefore, the district court's decision to vacate the guilty plea to the misdemeanor count, if error, was harmless since the defendant's situation was improved by the act.

### A. Power to Rescind Plea Agreement

Several circuits have recognized that the government can be freed from its obligations under a plea agreement after a defendant has entered a guilty plea pursuant to the agreement. *See United States v. Verrusio,* 803 F.2d 885, 887–89 (7th Cir. 1986); *United States v. Reardon,* 787 F.2d 512, 515–16 (10th Cir.1986); *United States v. Simmons,* 537 F.2d 1260, 1261–62 (4th Cir.1976); *United States v. Nathan,* 476 F.2d 456, 459 (2d Cir.1973); *United States v. McCarthy,* 445 F.2d 587, 591 (7th Cir. 1971). Although the government's contract defense in these cases was based on the defendant's breach of the agreement, the cases never discussed or indicated that

---

gations under the plea agreement. On the other hand, we are not persuaded that the court possesses some independent power of "rescission." The proper analysis is not whether the court has "vacated" or "rescinded" a guilty plea, but whether the court has acted pursuant either to the Federal Rules or to its common law authorization to address breached plea agreements or fraud on the court. In this case, the district court's action was taken pursuant to neither basis of authority.

7. This court has stated that specific performance may be appropriate where a plea agreement has been breached. *United States v. Herrera,* 640 F.2d 958, 960 (9th Cir.1981). The government relies upon *Government of Virgin*

*Islands v. Scotland,* 614 F.2d 360, 365 (3d Cir. 1980), for the proposition that a plea offer accepted by the defendant does not give the defendant the right to have specific performance, absent defendant's detrimental reliance. The government's reliance on *Scotland* is misplaced. In *Scotland,* the plea agreement had not yet been presented to the district court for acceptance and, in that sense, was unconsummated. Here, Partida–Parra's plea was entered and accepted by the court.

8. This error was obviously prejudicial. In finding "harmless error" in this case, the dissent simply fails to focus on the real error.

the government is limited in the type of contract defense it can use to free itself from a plea agreement. Here, the government's contract theory is based on a unilateral mistake, a defense not yet addressed by any court.

We have recognized as a general principle, however, that plea agreements are contractual in nature and that any dispute over their terms will be determined by contract-law standards. *See, e.g., United States v. Read,* 778 F.2d 1437, 1441 (9th Cir.1985); *United States v. Krasn,* 614 F.2d 1229, 1233 (9th Cir.1980). In resolving disputes, we have also stated that courts must first determine "what the parties to the plea bargain reasonably understood to be the terms of agreement." *United States v. Read,* 778 F.2d at 1441 (quoting *United States v. Arnett,* 628 F.2d 1162, 1164 (9th Cir.1979)). Although these principles presuppose the existence of a plea agreement, the overarching principle from which these principles are derived is that plea agreements are contractual in nature. Any contract defense should be available to the government or defendant, including a defense based on a unilateral mistake. The idea that plea agreements should be governed by the standards of contract law is not simply an "analogy" which the majority may dismiss as "imperfect" when it does not support the result they desire to reach, but rather a principle of law that must be confronted.

Consider a case in which the government agrees to recommend a five-year sentence in exchange for the defendant's guilty plea. The defendant's lawyer then negligently drafts an agreement which states that the government will recommend a ten-year sentence in exchange for the defendant's guilty plea. Pursuant to the agreement, the defendant enters a guilty plea and the court unconditionally accepts it. Prior to sentencing, the defendant's attorney dis-covers the mistake and asks the court to rescind the agreement. Under these circumstances, the court would allow the defendant to show that the agreement presented to the court should be nullified because it did not reflect the agreement reached with the government.

Likewise, if the government is the party that has made the unilateral mistake, reason requires that it also be able to have the agreement nullified.[1] Here, the government asked the district court to rescind the plea agreement. The government explained that it had entered a plea agreement with the defendant under which the government would drop three felony counts in exchange for the defendant's guilty plea to a felony count of possession of heroin with intent to distribute. The government later prepared documents for the proceeding in which the defendant would enter his plea. In doing so, the government made an error and charged the defendant with a misdemeanor count of possession under 21 U.S.C. § 844 instead of a felony count of possession with intent to distribute under 21 U.S.C. § 841. The defendant immediately pled guilty to the misdemeanor. Prior to sentencing, the government detected the mistake and notified defendant's counsel and the court.

On the basis of the government's explanation, the district court concluded that a "mistake of fact" had occurred. This finding was not clearly erroneous. *See Read,* 778 F.2d at 1441 (what the parties agreed to is a question of fact to be resolved by the district court). I would uphold the district court's decision to rescind the agreement.

**B. District Court's Decision to Vacate Guilty Plea was Harmless Error**

After the district court concluded that a "mistake of fact" had been made, it vacated the defendant's guilty plea. As the

---

**1.** The majority accuses the dissent of disingenuousness in arguing that district courts possess common law authority to rescind plea agreements when either the defendant or the government raises a valid contract defense. The majority argues that in reality this common law authority arises only when the government seeks recision because Rule 32(d) permits defendants to withdraw a guilty plea after demonstrating "fair and just reason." However, the fact that Congress has chosen to provide defendants the protection found in Rule 32(d) does not alter or impinge upon defenses that may exist at common law for the benefit of either party.

majority points out, the Federal Rules of Criminal Procedure do not expressly authorize the district court to vacate a guilty plea on its own initiative or upon the government's motion. After rescinding the agreement, the court should have asked the defendant if he wanted to withdraw his guilty plea to the misdemeanor, *see United States v. Reardon,* 787 F.2d 512, 513 (10th Cir.1986), or the defendant should have moved on his own initiative to withdraw the plea pursuant to Rule 32(d).

Although the district court erred by vacating the plea upon the government's motion, we must determine whether the error was harmless. *See* 28 U.S.C. § 2111; *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). Because the district court determined that the government was no longer bound to the plea agreement, the government could still prosecute the defendant on the felony counts in the original indictment. Prosecution of these counts would not have violated the Double Jeopardy Clause's prohibition on successive prosecutions for the same offense. For purposes of the Clause, a greater-included offense is the "same" as a lesser-included offense. *Brown v. Ohio,* 432 U.S. 161, 168, 97 S.Ct. 2221, 2226–27, 53 L.Ed.2d 187 (1977). The government's prosecution of the count under 21 U.S.C. § 841(a)(1) (possession with intent to distribute) was for the "same" offense as the misdemeanor possession count to which the defendant had entered a guilty plea. A double jeopardy problem, however, did not arise as to this count. Jeopardy did not attach when the district court accepted the defendant's guilty plea and later vacated it before sentencing. *United States v. Santiago Soto,* 825 F.2d 616, 617–20 (1st Cir. 1987) (also noting that contrary holding in *United States v. Cruz,* 709 F.2d 111 (1st Cir.1983) overruled by *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984)). The Double Jeopardy Clause did not bar prosecution of the count under 21 U.S.C. § 846 (conspiracy to possess heroin with intent to distribute). The Clause bars only successive prosecutions of the *same* offense. "The commission of a substantive offense and a conspiracy to commit it are

separate and distinct crimes, and a plea of double jeopardy is no defense to a conviction for both." *Pereira v. United States,* 347 U.S. 1, 11, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954); *United States v. Thompson,* 814 F.2d 1472, 1476 (10th Cir.1987). The Clause also did not bar prosecution of the third count under 18 U.S.C. § 924(c) (use of a firearm during and in relation to a drug trafficking offense). A conviction on this count could have arisen from either a conviction on the count for possession with intent to distribute or the count for conspiracy to possess with intent to distribute, *see United States v. Pietri,* 683 F.2d 877, 880 (5th Cir.1982) (offense can be based on conspiracy conviction).

Since the later prosecutions were not barred, the district court's decision to vacate the guilty plea to the misdemeanor only worked to the defendant's advantage. The district court's "error" allowed the defendant to escape a misdemeanor conviction. The error was harmless.

The majority holds that the error warrants reversal not only of the district court's decision to vacate the plea, but of all felony convictions resulting from the later prosecution of the defendant. This holding has no legal foundation. It stems from the majority's failure to distinguish between the district court's power to rescind a plea agreement and the court's power to vacate a guilty plea on the government's motion. The court's power to rescind the agreement is beyond dispute. *See supra.* The court's decision to rescind the agreement was based on a finding of a "mistake of fact." This finding was not clearly erroneous.

The majority assumes that because the district court lacked power to vacate the plea, the proper remedy is to reinstate the guilty plea *and* the plea agreement which would have prohibited prosecution of all but one of the felony counts in the original indictment. The district court had power to rescind the plea agreement. When it exercised that power, the government was free to prosecute the defendant on the felony counts in the original indictment, and the Double Jeopardy Clause did not bar the

prosecution. The majority offers no rationale, and can provide none, for reversing the felony convictions. At most, the majority can reinstate the guilty plea to the misdemeanor charge if it believes that the district court's error was not harmless. Any conviction on the misdemeanor possession charge would be barred by the Double Jeopardy Clause because the defendant has already been properly convicted of the greater-included offense under 21 U.S.C. § 841(a)(1). I respectfully dissent.