15 F.3d 1094
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Howard WEISBROD, Defendant-Appellant.
 No. 92-16297.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted May 12, 1993.
Decided Dec. 7, 1993.
 
 1
 Before BROWNING and CANBY, Circuit Judges, and KELLEHER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Howard Weisbrod appeals the district court's denial of his motion under 18 U.S.C. Sec. 2255 to correct or vacate his sentence. Weisbrod claims (1) his conviction in California violates the Double Jeopardy Clause because it is predicated on the same conduct as his conviction in New York; (2) the government violated his plea agreement; and (3) he received ineffective assistance of counsel insofar as his attorney failed to raise the double jeopardy issue, or the plea agreement issue.
 
 
 4
 The district court had jurisdiction under 18 U.S.C. Sec. 2255. We have jurisdiction under 18 U.S.C. Sec. 2253. The appeal is timely, and this is Weisbrod's first petition. We affirm as to Weisbrod's double jeopardy claim and his claim of ineffective assistance insofar as it is based on his counsel's failure to raise the double jeopardy issue below. With regard to the issue whether the government impermissibly violated the terms of his first plea agreement, however, we conclude the district court erred in denying Weisbrod's motion without holding an evidentiary hearing on the plea agreement issue. We therefore reverse and remand for an evidentiary hearing as to the plea agreement issue and Weisbrod's claim of ineffective assistance insofar as it is based on his counsel's failure to raise the claimed violation of the plea agreement below.
 
 BACKGROUND
 
 5
 Weisbrod was charged in the Southern District of New York with four counts relating to the sale of methamphetamine. He pled guilty to counts Three and Four, charging him with distributing methamphetamine and engaging in a continuing criminal enterprise consisting of various conspiracies to sell and sales of that drug. At the time of Weisbrod's prosecution in New York, both he and the government knew he would soon be indicted in California on separate distribution of methamphetamine and firearms charges.
 
 
 6
 Weisbrod and the government entered into a plea agreement in New York. Under the terms of the New York plea agreement, Weisbrod promised to plead guilty to counts Three and Four of the New York information and to the charges soon to be brought in the Northern District of California. In exchange, the government promised to recommend, through its agency the Organized Crime Strike Force for the Northern District of California, that any sentence imposed in the California proceedings run concurrently with Weisbrod's sentence for the New York crimes.[1]
 
 
 7
 The New York plea agreement expressly represented that it was executed "in complete satisfaction of those federal crimes committed by Mr. Weisbrod," of which the government had knowledge as of the date of the agreement[2] as a result of long-term joint FBI and local law-enforcement undercover investigation of the Hell's Angels known as "Operation Roughrider." The agreement went on to note that representatives of the United States Attorney's Office for the Northern District of California, including the Organized Crime Strike Force for the Northern District of California, along with representatives of the FBI and several other United States Attorneys, concurred in this "complete satisfaction" representation.
 
 
 8
 Subsequently, Weisbrod entered into a plea agreement with the United States Attorney for the Northern District of California.[3] Under the terms of the California plea agreement, Weisbrod promised to plead guilty to the California indictment. In exchange, the government promised not to prosecute Weisbrod for other crimes arising out of the "Roughrider" investigation and not to request the sentence in the California case run consecutive to the sentence in the New York case. There is nothing in the record to suggest that any additional criminal activity on Weisbrod's part came to the government's attention between the execution of the New York plea agreement and that of the California plea agreement.
 
 
 9
 At the sentencing hearing in the California case, the following colloquy occurred:
 
 
 10
 Court: There have been discussions ... in connection with this plea; isn't that correct?
 
 
 11
 Weisbrod: Yes.
 
 
 12
 Court: And the agreement essentially is that you will plead guilty to both counts of the indictment ... [and] the government reserves the right to argue in its fullest discretion at the time of sentencing except that it will not recommend the sentence in the case to run consecutively with the sentence which you receive or have received in ... New York and the court retains its full discretion to sentence the defendant as authorized by law.
 
 
 13
 * * *
 
 
 14
 Do you understand the terms of that settlement?
 
 
 15
 Weisbrod: Yes.
 
 
 16
 Court: Have you discussed those settlement terms with your attorney?
 
 
 17
 Weisbrod: Yes.
 
 
 18
 Court: Other than what I have just stated has anyone given you any indication as to what sentence may be imposed?
 
 
 19
 Weisbrod: Yes.
 
 
 20
 Court: What is your understanding?
 
 
 21
 Weisbrod: It wasn't an understanding, but I was given the--well, I was told that this sentence would run concurrent with the sentence in New York. The judge in New York gave me the maximum sentence of 15 years.
 
 
 22
 Court: I'm not talking about the New York proceedings and the two counts here. I asked [the prosecutor] the maximum sentence that can be imposed, and so far as sentencing is concerned the government reserves the right to argue and recommend to the court whatever it wants to recommend except that they will not recommend that this sentence run consecutively with the sentence in New York, do you understand that?
 
 
 23
 Weisbrod: Yes.
 
 
 24
 True to the terms of the California plea agreement but not to those of the prior New York plea agreement, the government recommended neither a concurrent nor a consecutive sentence in the California proceedings. Weisbrod was sentenced to ten years' imprisonment on the first count of the California indictment and two years' imprisonment on the second count. The two year sentence is to run consecutive to the ten year sentence, and both California sentences are to run consecutive to the New York sentence.
 
 DISCUSSION
 I. Standard of Review
 
 25
 We review the district court's decision to grant or deny a petition for habeas corpus de novo, applying the clearly erroneous standard to the extent the district court's finding of facts is reviewed. Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991).
 
 II. Double Jeopardy
 
 26
 Weisbrod argues his conviction and sentence in the California case runs afoul of the Double Jeopardy Clause because the criminal conduct with which he was charged in the California indictment also served as a predicate offense to the Continuing Criminal Enterprise charge in the New York information. This argument is without merit.
 
 
 27
 "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569 (1989). This rule generally forecloses collateral attack on double jeopardy grounds. Id. at 569.
 
 
 28
 There is a narrow double jeopardy exception to the rule barring collateral attack on a guilty plea established by the Supreme Court in Blackledge v. Perry, 417 U.S. 21 (1974), and Menna v. New York, 423 U.S. 61 (1975) (per curiam). This exception applies only where the government is precluded from haling the defendant into court at all on the second charge because that charge is so facially duplicative of the earlier charged offense that the admissions contained in the second guilty plea could not conceivably be construed as amounting to more than a redundant confession to the earlier offense.
 
 
 29
 The two charging instruments in this case appear, on their faces, to be directed at different conduct. The New York information charges Weisbrod with distributing methamphetamine in and engaging in a continuing criminal enterprise centered in and oriented toward the Southern District of New York. It alleges a great deal of activity in New York. In contrast, the only conduct it alleges in California is that: two of Weisbrod's coconspirators travelled to California between January of 1984 and May of 1985 to procure methamphetamine, and another coconspirator tried to pick up a package containing methamphetamine that had been shipped from California. Weisbrod, however, is in no position to avail himself of this narrow exception. The California indictment charges Weisbrod with distributing methamphetamine and possessing firearms in California in April of 1985. There is nothing in the New York information to indicate that either the sale of methamphetamine or the possession of firearms in the Northern District of California is a predicate offense for any of the New York charges.
 
 
 30
 Moreover, in pleading guilty to counts Three and Four of the New York information, Weisbrod did not admit to any sale of methamphetamine or possession of firearms in California. Thus, we find no violation of the Double Jeopardy Clause in Weisbrod's conviction and sentence on his plea of guilty to the California indictment.
 
 III. Violation of Plea Agreement
 
 31
 The New York plea agreement bound the government to make an affirmative recommendation of concurrent sentences. The California plea agreement purports merely to bind the government to refrain from recommending consecutive sentences. At the sentencing hearing, the government did not recommend the California sentence be imposed to run concurrently with the New York sentence.
 
 
 32
 Weisbrod contends the government's failure to recommend concurrent sentences constitutes a material breach of the New York plea agreement, vitiating the intelligent and voluntary character of his guilty plea in the California proceedings. This is so, Weisbrod maintains, because it was never made clear to him that the language of the California agreement served to eliminate the government's obligation under the New York agreement to recommend concurrent sentences. Indeed, he accuses the government of duping him into giving up the primary consideration he received for entering into the original, overarching, plea agreement in New York. The government contends the California agreement constitutes a valid modification of the terms of the New York agreement.
 
 
 33
 In general, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). "In determining whether a plea agreement has been broken, courts look to 'what was "reasonably understood by [the defendant] when he entered his plea of guilty." ' " United States v. Travis, 735 F.2d 1129, 1132 (9th Cir.1984) (citations omitted).
 
 
 34
 A determination whether the government violated the New York plea agreement depends on a determination " 'what the parties to the plea [agreement], reasonably understood to be the terms' " of that agreement and the California agreement. United States v. Sutton, 794 F.2d 1415, 1423 (9th Cir.1986) (citation and internal quotations omitted). "What the parties agreed to 'is a question of fact to be resolved by the district court.' " McKenzie v. Risley, 801 F.2d 1519, 1526 (9th Cir.1986) (quoting Sutton, 794 F.2d at 1423).
 
 
 35
 When a section 2255 motion is based on allegations outside the record, which if true would support relief, the district court must conduct a hearing on those allegations. Watts v. United States, 841 F.2d 275, 277 (9th Cir.1988) (per curiam); Baumann v. United States, 692 F.2d 565, 571 (9th Cir.1982) ("whenever the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims," the district court must hold an evidentiary hearing).
 
 
 36
 In this case, Weisbrod's claim the government violated the New York plea agreement calls into question the intelligent and voluntary character of his plea, cf. Broce, 488 U.S. at 574, and whether the government engaged in some form of misrepresentation in executing the California plea agreement. Moreover, the colloquy between Weisbrod and the district court at the sentencing hearing was ambiguous, raising doubts as to whether Weisbrod adequately understood the terms of the California plea agreement when he executed it. Given the seriousness of his charges and the ambiguity of the present record, we cannot dismiss Weisbrod's claim of a plea agreement violation in the absence of additional evidence regarding Weisbrod's allegations.
 
 
 37
 While we readily use objective canons of interpretation drawn from contract law to construe plea agreements, the Federal Rules of Criminal Procedure ultimately govern the formation and enforcement of binding plea agreements. United States v. Partida-Parra, 859 F.2d 629, 634 (9th Cir.1988). Thus we have refused to relieve the government from a voluntarily executed plea agreement on grounds of mistake that might have sufficed in the ordinary contracts context. Id. at 634. The government argues that Weisbrod similarly should be precluded from challenging the validity of the California plea agreement on grounds of mistake. We do not agree. Important to our holding in Partida-Parra was our recognition that the Federal Rules of Criminal Procedure are far more lenient toward defendants than they are toward the government in the plea agreement context. Id. at 633 (citing Fed.R.Crim.P. 32(d)). In this case, the defendant seeks to hold the government to the terms of an indisputably binding plea agreement and claims he was deceived by a duplicitous second agreement. Partida-Parra cannot reasonably be construed to preclude this claim.
 
 
 38
 Here, the government and Weisbrod made one overall agreement disposing of the criminal charges against him arising from the so-called "Roughrider" investigation. Disposition of those charges occurred in two phases: the first in New York, the second in California.[4] The government maintains that midway through the consummation of this arrangement Weisbrod released the government from perhaps its most significant concession to him--its obligation to recommend concurrent sentences for both the New York and the California charges to which Weisbrod agreed to plead guilty. That he would have knowingly done so without extracting some other concession, or consideration, from the government in exchange is difficult to believe.
 
 
 39
 The government has argued that some form of consideration was, in fact, involved. Weisbrod insists otherwise. There is no indication on the face of the California agreement that any additional concession was being made by the government in exchange for its being released from its duty to recommend concurrent sentences. The district court held no evidentiary hearing on Weisbrod's 2255 motion, and the transcript of the sentencing hearing adds nothing to the express terms on the agreement. Thus, the record does not disclose whether any additional consideration was involved in the California plea agreement, let alone what that consideration was. Without a more fully developed record, we cannot determine whether the change worked by the California agreement on the government's duty to recommend concurrent sentences was a valid modification or an invalid violation of the New York agreement.
 
 
 40
 Neither will we terminate consideration of his claim by reference to the meaning of the California agreement's express terms and the fact that Weisbrod signed it. The significance of the language used in the California plea agreement regarding the government's obligations at sentencing, and the change that represented from the government's pledge in the New York agreement, could hardly be lost on an attorney. To a lay person such as Weisbrod, however, the significance may not have been apparent. If the significance of the different language was not explained to Weisbrod, he may not have understood it. In such a case, we could not say his failure to recognize the significance on his own was unreasonable. That depends on whether it was brought to his attention, either by his own counsel or by the government. If not, Weisbrod's plea of guilty in the California proceedings was not intelligent and voluntary. The present record sheds no light on such circumstances of the negotiations.
 
 
 41
 Because the circumstances of the plea negotiations, including the nature of the representation provided to Weisbrod, are matters outside the present record, the determination whether Weisbrod did, in fact, reasonably misunderstand the change being worked by the California agreement cannot be made in the absence of an evidentiary hearing. Thus, it was error for the district court to deny Weisbrod's 2255 motion without holding an evidentiary hearing to determine the validity of the allegations underlying Weisbrod's claim the government surreptitiously used the California plea agreement to violate the terms of the New York plea agreement. Watts, 841 F.2d at 277; Baumann, 692 F.2d at 571.
 
 IV. Ineffective Assistance of Counsel
 
 42
 As we find no double jeopardy violation, Weisbrod's claim that his trial counsel's failure to raise the double jeopardy issue below constitutes ineffective assistance of counsel must fail. This is so because Weisbrod has failed to demonstrate "a reasonable probability that ... the result of the proceeding would have been different" had his trial counsel raised the double jeopardy issue.
 
 
 43
 In contrast, we are unable to discount Weisbrod's claim the government violated its binding plea agreement with him. Consequently, we cannot say Weisbrod's claim that his trial counsel's failure to raise the plea agreement issue constitutes ineffective assistance is without merit. Indeed, we suspect the district court's evidentiary hearing on the plea agreement issue necessarily will involve an examination of the representation rendered by Weisbrod's counsel during the California proceedings and plea negotiations.
 
 CONCLUSION
 
 44
 For the reasons set forth above, we: (1) affirm the judgment of the district court as to Weisbrod's double jeopardy claim and the double jeopardy portion of his ineffective assistance claim; (2) reverse the district court's judgment as to Weisbrod's plea agreement claim and his ineffective assistance claim insofar as it is based on the plea agreement claim; and (3) remand for an evidentiary hearing on the allegations underlying Weisbrod's plea agreement claim and that aspect of his ineffective assistance claim.
 
 
 45
 REVERSED AND REMANDED.
 
 
 
 *
 The Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 As the criminal activity with which Weisbrod was charged ended in 1985, this is a pre-Guidelines case
 
 
 [2]
 The New York agreement was executed on December 12, 1985
 
 
 [3]
 The California agreement was executed on April 28, 1986
 
 
 [4]
 It is of no moment that different prosecutors drew up the two plea agreements in this case. The same aggregate criminal activity served as the subject matter for both plea agreements. And in both instances Weisbrod negotiated and entered into the plea agreements with the same party, namely the United States. Moreover, the second plea agreement was entered into in partial fulfillment of the first agreement's terms. A prosecutor's breach of a plea agreement will not be excused because different lawyers in the prosecutor's office engaged in inconsistent negotiations with a defendant, Santobello, 404 U.S. at 262. Similarly, because the New York agreement purports to set the terms for all charges arising from the "Rough Rider" investigation, the inconsistency in the terms of the New York and California agreements cannot be excused on the ground the agreements were drawn up by different United States Attorneys in connection with separate charging instruments