# United States Court of Appeals
## For the First Circuit

No. 02-1538

UNITED STATES OF AMERICA,

Appellee,

v.

IGNACIO VENTURA-CRUEL

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Boudin, Chief Judge,

Baldock,* Senior Circuit Judge, and

Howard, Circuit Judge.

    G. Richard Strafer, with whom G. Richard Strafer, P.A., was on brief for appellant.
    Nelson Pérez-Sosa, Assistant United States Attorney, with whom H.S. Garcia, United States Attorney and Sonia I. Torres-Pabón, Assistant United States Attorney, Chief, Criminal Division, were on brief, for appellee.

December 22, 2003

*Of the Tenth Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**.  Defendant-appellant Ignacio Ventura-Cruel appeals from his convictions for participating in a cocaine conspiracy.  To resolve this appeal, we must consider whether, in the circumstances of this case, the district court lacked the authority to reject Ventura-Cruel's guilty plea and whether admissions that he made in a letter of confession written pursuant to his plea agreement were properly admitted against him at trial.  On this second issue, we vacate the convictions and remand for a new trial.

## I. Background

On December 30, 1998, a grand jury returned a four-count indictment against numerous defendants describing an alleged cocaine smuggling and distribution conspiracy operating out of Puerto Rico.  The indictment charged Ventura-Cruel with two counts, participating in a conspiracy to possess with the intent to distribute cocaine, see 21 U.S.C. § 846, and possessing with intent to distribute cocaine, see 21 U.S.C. § 841(a)(1).  The government included in the indictment a compilation of overt acts which evidenced the existence of the conspiracy.  Concerning Ventura-Cruel, the indictment alleged that on April 23, 1998, at the behest of other conspiracy members, he traveled to an airport in St. Thomas, U.S. Virgin Islands with $4,000 and a "travel ticket" to deliver to Juan Carlos Pion, one of the leaders of the conspiracy.

However, "due to operational difficulties," he was unable to make the delivery.

On the morning of February 7, 2000, the day his trial was scheduled to begin, Ventura-Cruel reached a plea bargain with the government. Under the agreement, Ventura-Cruel agreed to plead guilty to the first count of the indictment. The government in turn agreed that it would move to dismiss the second count. The government also agreed that it would provide the court with a sentencing recommendation of fifty-four months of incarceration if Ventura-Cruel qualified for a reduction under the safety-valve. See 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.[1]

As an addendum to the agreement, Ventura-Cruel admitted certain facts demonstrating his involvement in the conspiracy. The addendum contained the same facts that were alleged in the indictment. On the same afternoon that Ventura-Cruel accepted the plea bargain, he appeared before the district court for a change of plea hearing. At that hearing, the court conducted the colloquy mandated by Fed. R. Crim. P. 11. The court reviewed the terms of the plea agreement with Ventura-Cruel. It stressed to him that the

---

[1] The "safety valve" permits a court to sentence a first-time offender to less than a mandatory minimum sentence if the defendant demonstrates compliance with several requirements. See United States v. Matos, 328 F.3d 34, 36 (1st Cir. 2003). The requirement most relevant to this appeal is that the defendant must provide the government with all the information he has "concerning the offense or offenses that were part of the same course of conduct or a common scheme or plan." Id.

agreement did not bind the court to impose the sentence recommended by the government.  It then proceeded to describe the rights that Ventura-Cruel would relinquish by accepting the plea bargain and to question him to assure that his waiver of these rights was knowing and voluntary.  Following this discussion, the court summarized the facts in the addendum, and the government described the facts that it would have proved if there had been a trial.  Ventura-Cruel acknowledged that these facts accurately summarized his involvement in the conspiracy.  At that point, the court ruled that "a basis in fact for the plea exists, and therefore, a judgment of guilty shall be entered as to count one."  The court then concluded the hearing by requesting the preparation of a presentence report and by scheduling a sentencing hearing.  The sentencing hearing was scheduled for June 23, 2000.

A few weeks after the change of plea hearing, beginning on February 25, 2000, Ventura-Cruel met for several debriefings with Special Agents Jose Roman and Aramis Quinones of the Drug Enforcement Agency (the "DEA").[2]  The purpose of the debriefings was for Ventura-Cruel to provide the government with the information that he possessed about the conspiracy so that he could qualify for the safety-valve reduction.

---

[2] Additional communications between Ventura-Cruel and the DEA agents took place on March 9, 2000, March 7, 2000, and March 13, 2000.

At the sentencing hearing, on June 23, 2000, the government opposed Ventura-Cruel's eligibility for the safety-valve reduction because, in its estimation, Ventura-Cruel had not been truthful in the debriefings. Based on the government's representation, the district court decided that it could not pronounce sentence until it determined if, in fact, Ventura-Cruel was eligible for the safety-valve reduction.[3]

On February 12, 2001, the district court convened an evidentiary hearing to consider Ventura-Cruel's safety-valve eligibility. Ventura-Cruel maintained the burden of proving that he had been completely forthcoming. See United States v. Marquez, 280 F.3d 19, 23 (1st Cir. 2002). To meet this burden, he introduced the DEA agents' report memorializing the debriefing conversations. The government responded by introducing the testimony of Agent Roman. Agent Roman testified that Ventura-Cruel told him that when he brought the $4,000 to Pion, "he didn't have any knowledge they [sic] were involved in drug trafficking." Agent Roman also testified that Ventura-Cruel told him that "he has never been involved in drug trafficking, what he did [on April 23, 1998] was a favor for a friend," and that he was unaware that Pion was involved in drug smuggling until the date of his arrest.

---

[3] The court, not the government, decides if a defendant qualifies for the safety-valve reduction. See United States v. White, 119 F.3d 70, 72 (1st Cir. 1997).

The government also offered the testimony of DEA Agent Hector Colon, another agent involved in the investigation of the conspiracy. Agent Colon testified that he had interviewed Pion as part of his investigation, and that Pion had stated that Ventura-Cruel was extensively involved in the conspiracy. Pion also stated that Ventura-Cruel had provided the vessels used for the drug smuggling. During the examination of Agent Colon, the government asked whether there was evidence showing that Ventura-Cruel was a drug smuggler just like Pion. The defense counsel immediately objected to the question, stating "the evidence is that he is not."

The district court understood the defense counsel's objection to be an assertion that Ventura-Cruel was not involved in drug smuggling. Combining this understanding with Agent Roman's earlier testimony that Ventura-Cruel had claimed not to know that he was involved in a drug conspiracy, the court determined that there was no longer a factual basis for accepting Ventura-Cruel's guilty plea. The court, by its own motion, withdrew "the plea of guilty entered by [the defendant because it could not] allow him to retain a plea of guilty when he didn't know that what was going on were drugs."

After rejecting the plea, the district court reinstated the indictment against Ventura-Cruel and set a trial date. The evidence introduced at trial showed that Ventura-Cruel was an active participant in the drug conspiracy headed by Pion. Ventura-

Cruel's role was to organize the maritime transport of the drugs from Colombia to St. Croix, St. Thomas or St. Maarten for storage. Once the drugs were stored on of one these islands, Ventura-Cruel coordinated with Pion to transport the drugs to Puerto Rico. The government relied primarily on testimony from Miguel Couvertier, a paid informant, and Ruben Gomez, one of Ventura-Cruel's co-conspirators, who testified pursuant to a cooperation provision in his plea agreement. In addition to this testimony, the government called Alma Martinez, Ventura-Cruel's probation officer. Through this witness, the government introduced a letter which Ventura-Cruel had written implicating himself in the conspiracy. The jury convicted Ventura-Cruel on both counts. The district court subsequently sentenced Ventura-Cruel to life in prison, and he timely appealed.

## II. <u>Discussion</u>

We address two primary issues. First, we consider whether the district court maintained authority under the Rules of Criminal Procedure to reject Ventura-Cruel's guilty plea after having accepted it over a year earlier. Second, we consider whether the district court erred by admitting at trial the letter that Ventura-Cruel wrote to his probation officer confessing his involvement in the conspiracy.

### A. Authority to Reject Ventura-Cruel's Guilty Plea

Ventura-Cruel claims that the district court acted

without authority in rejecting his guilty plea after having previously accepted it. Specifically, he claims that Fed. R. Crim. P. 11 did not provide the district court with the power to reject his plea.[4]

It is well settled that a defendant does not have an absolute right to plead guilty. Santobello v. New York, 404 U.S. 257, 262 (1971). The Supreme Court has stressed that the plea "phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." Id. Rule 11 provides a defendant with these essential safeguards.

Before accepting a guilty plea, the district court must address the defendant personally to assure that he understands, inter alia, the charge against him, the possible punishment, that he has a right to an attorney, that he has the right to plead not guilty, that he has a right to a jury trial, and that if he pleads guilty, he waives the right to a trial. Fed. R. Crim. P. 11(c). In addition, the district court must determine that the defendant's plea is voluntary and not the result of force, threats, or promises. Fed. R. Crim. P. 11(d).

---

[4] Ventura-Cruel has argued on appeal only that the district court did not have the power to reject his plea. He has not argued that, even if the court had such power, its exercise of that power was an abuse of discretion.

Under Rule 11, the district court must also determine whether there is a factual basis for the defendant's guilty plea. Fed. R. Crim. P. 11(f). The purpose of this requirement is to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." Advisory Committee Notes to the 1966 Amendment to Fed. R. Crim P. 11. Rule 11(f) provides that:

> Notwithstanding the acceptance of the plea of guilty, the court should not enter a judgment upon such a plea without making such inquiry as shall satisfy it there is a factual basis for the plea.[5]

This rule provides the district court with continuing authority. As the plain language suggests, the "district court's obligations under Rule 11(f) continue until it has entered judgment." United States v. Smith, 160 F.3d 117, 121 (2d Cir. 1998). Thus, the rule "permits the court to retrospectively reject the plea, after originally accepting it." 24 Moore's Federal Practice, § 611.08[2][b] (3d ed. 2003); see 8 Charles Alan Wright, Federal Practice & Procedure Criminal, § 174 at 207 (3d ed. 1999) ("If a plea has been accepted and the court should later decide that it is not satisfied that there was a factual basis for the plea, it should

_____

[5] Rule 11 was amended in December 2002. Former Rule 11(f) has been recodified as Rule 11(b)(3) and now states, "Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." The Advisory Committee Notes to the 2002 Amendment state that this change is only "stylistic."

vacate the plea and then enter a plea of not guilty on behalf of the defendant."); see also Smith, 160 F.3d at 121 (noting that if the court decides that "there was no factual basis for a guilty plea after accepting it, the court should vacate the plea and enter a plea of not guilty on behalf of the defendant").  In this regard, the Advisory Committee Notes to the 1966 Amendment to Rule 11 state that the "normal consequences of a determination that there is not a factual basis for the plea would be for the court to set aside the plea and enter a plea of not guilty."

As the rule makes clear, however, the district court's authority to reject a plea under Rule 11(f) is finite; it terminates when the court enters judgment.  Rule 32(d)(1) states, "a judgment of conviction must set forth the plea; the verdict or findings; the adjudication; and the sentence." (emphasis supplied).[6]  Thus, in a criminal matter, "a court must impose sentence before a judgment of conviction can issue."  Mitchell v. United States, 526 U.S. 314, 337 (1999).  Accordingly, the factual predicate for the guilty plea must exist not only at the time that the court initially accepts the plea, but also when it imposes sentence.  See United States v. Bennett, 291 F.3d 888, 894 (6th Cir. 2002); see also Howard v. United States, 135 F.3d 506, 509 (7th Cir. 1998) ("any finding of an adequate factual basis at the initial plea hearing is necessarily

---

[6] As a result of the December 2002 amendments to the Rules of Criminal Procedure, Rule 32(d)(1) has been recodified as Rule 32(k).  Its language remains the same.

-10-

preliminary"), <u>cert. denied</u>, 525 U.S. 832 (1998).

Here, the district court initially accepted Ventura-Cruel's guilty plea after determining that there was a factual basis for his plea at the change of plea hearing on February 7, 2000. However, at the safety-valve hearing on February 12, 2001, the court heard evidence that subsequent to the change of plea hearing Ventura-Cruel claimed that he did not know that he was part of a drug conspiracy at the time that he committed the acts in furtherance of the conspiracy. Because a defendant must know that his conduct was part of a drug conspiracy in order to be guilty under 21 U.S.C. § 846, <u>see</u> <u>United States</u> v. <u>Nelson-Rodriguez</u>, 319 F.3d 12, 27-28 (1st Cir. 2003), <u>cert. denied</u>, -- U.S. --, 123 S.Ct. 2589 (2003), the court concluded that it could not accept Ventura-Cruel's guilty plea. Since the district court rejected the guilty plea prior to entering judgment, the court acted within its authority under Rule 11(f).[7]

Ventura-Cruel relies on several cases in which this Circuit and others have held that a district court exceeds its authority under Rule 11 by rejecting a guilty plea subsequent to

_____

[7] We recognize that the district court stated that it was entering judgment on Ventura-Cruel's plea after initially accepting it at the change of plea hearing. However, the court could not enter judgment at that juncture because it had not yet pronounced sentence. <u>See</u> Fed. R. Crim. P. 32(d)(1). While the district court misstated that it was entering judgment by accepting the plea, consistent with Rule 32(d)(1), the docket does not indicate that the clerk entered judgment at that time. <u>See</u> <u>id.</u> (judgment must be signed by the judge and entered by the clerk).

having accepted it. See United States v. Cruz, 709 F.2d 111 (1st Cir. 1983); accord United States v. Ritsema, 89 F.3d 392 (7th Cir. 1996); United States v. Skidmore, 998 F.2d 372 (6th Cir. 1993); United States v. Partida-Parra, 859 F.2d 629 (9th Cir. 1988); United States v. Blackwell, 694 F.2d 1325 (D.C. Cir. 1982). But in each case, the district court vacated the defendant's guilty plea for a reason other than that the plea lacked a factual foundation. See Ritsema, 89 F.3d at 396 (reversing district court's vacatur of plea because it thought mandated sentence in plea agreement was too lenient); Skidmore, 998 F.2d at 374-75 (reversing district court's modification of plea agreement to excuse defendants from asset forfeiture provision because court deemed provision unfair); Partida-Parra, 859 F.2d at 631 (reversing district court's vacatur of plea because plea agreement contained "clerical error"); Cruz, 709 F.2d at 112 (reversing district court's vacatur of plea because mandated sentence in plea agreement was inconsistent with sentences received by co-defendants); Blackwell, 694 F.2d at 1336 (reversing district court's vacatur of plea after defendant ignored admonishment that if she testified in favor of co-defendant it would vacate plea). Because none of these cases involved a court rejecting a plea because it lacked a factual predicate, the court's authority to reject a plea under Rule 11(f) was not implicated.

The Ninth Circuit explained the scope of the district court's Rule 11(f) authority in Partida-Parra, 859 F.2d at 631.

-12-

There, the court noted that a district court generally may not accept a guilty plea and then subsequently reject it. Id. However, it observed that Rule 11(f) provides an exception to this general rule: Rule 11(f) "implies that acceptance of a guilty plea does not foreclose a subsequent rejection of the plea if factual questions emerge, for instance at sentencing." Id. That is exactly the circumstance here. During the sentencing process, the district court heard evidence that convinced it that there was no longer a factual basis to support Ventura-Cruel's guilty plea. It therefore rejected the guilty plea and entered a plea of not guilty in accord with Rule 11(f). See Smith, 160 F.3d at 121.[8]

---

[8] Ventura-Cruel, relying on Cruz, 709 F.2d at 114, claims that the district court's rejection of his plea also violated the Double Jeopardy Clause. See U.S. Const. Amend. V. In light of the Supreme Court's decision in Ohio v. Johnson, 467 U.S. 493 (1984), the Double Jeopardy analysis in Cruz is no longer valid. See United States v. Kurkculer, 918 F.2d 295, 301 n.9 (1st Cir. 1990); United States v. Santiago Soto, 825 F.2d 616, 620 (1st Cir. 1987); accord Ritsema, 89 F.3d at 399 n.6; United States v. Foy, 28 F.3d 464, 471 n.13 (5th Cir. 1994). As a fallback, Ventura-Cruel, citing Morris v. Reynolds, 264 F.3d 38 (2d Cir. 2001), contends that the Double Jeopardy Clause nevertheless applies because the plea was "unconditionally accepted" and the "defendant was adjudicated guilty" by the district court. This contention is based on a faulty predicate. As discussed above, the district court's initial acceptance of Ventura-Cruel's plea was necessarily conditional because the court maintained authority under Rule 11(f) to vacate the plea until it entered judgment. See Howard, 135 F.3d at 509.

Ventura-Cruel also claims that his trial counsel provided ineffective assistance because he failed to alert the court that it acted without authority by rejecting his guilty plea. Our conclusion that the district court acted within its authority effectively disposes of this claim. See Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990) (failure to raise meritless legal

## B. Admission of Ventura-Cruel's Confession

Ventura-Cruel's second claim is that the district court erred by admitting into evidence, at his subsequent trial, the letter confessing guilt which he wrote to his probation officer as part of the presentencing process initiated after the court had accepted his guilty plea. He claims that the court's decision to admit the letter violated principles of basic fairness guaranteed by due process because he tendered this confession under a belief that he was not protected by the privilege against self-incrimination.

Ventura-Cruel's plea agreement provided that he could receive a reduction in his sentence for acceptance of responsibility, see U.S.S.G. § 3E1.1. To receive such a reduction, the agreement required Ventura-Cruel to "accept full responsibility for the offense committed." It also provided that he could receive an additional reduction under the "safety-valve" provision, see U.S.S.G. § 5C1.2, if he provided "truthful and complete information and evidence to the United States" about his crime and related events. At the change of plea hearing, the district court explained to Ventura-Cruel these sentencing provisions and that by pleading guilty he was waiving his privilege against self-incrimination.

Faced with the requirement that he provide incriminating

---

argument cannot constitute ineffective assistance of counsel); United States v. Victoria, 876 F.2d 1009, 1012-13 (1st Cir. 1989) (same).

-14-

information to receive a shorter sentence and a belief that he was no longer protected against self-incrimination, Ventura-Cruel authored a letter of confession on May 23, 2000, to his probation officer.[9]  The letter stated:

> The first thing I want to tell you is that I accept full responsibility for what I have done in this case.  During the early evening of April 23, 1998, I delivered some electronic equipment, a plane ticket, and $4,000 to a man in the airport in the St. Thomas, VI.  This man was working for Juan Carlos Pion and was going to travel to St. Maarten.  After this delivery, I received a call to pick up these items, since the trip to St. Maarten had been canceled.  This electronic equipment was eventually seized during arrests that were made in July of 1998 for cocaine trafficking.
>
> I do not blame anyone but myself for my activity in this case.  I was wrong and I suffer every day for the mistakes that I have made in this case . . . What I did in this case goes against everything I believe in.  I promise that I will never violate the law  again.  I am very, very sorry for what I have done.  I look forward to the time when this problem is behind me, but the pain in my heart for what I have done will never leave me.

The district court vacated Ventura-Cruel's guilty plea several months after he wrote this letter.

---

[9] Ventura-Cruel wrote the letter after the probation officer told defense counsel that a written statement admitting responsibility would suffice to establish Ventura-Cruel's eligibility for the acceptance of responsibility reduction.  Thus, Ventura-Cruel offered this confession to comply with the mechanism established by his plea agreement for receiving a shorter sentence.

Ventura-Cruel moved to exclude the letter from his trial, but the district court denied his motion and admitted it over his objection. The court admitted the letter because it concluded that the rules of evidence only prohibited the introduction of statements made by a defendant as part of the plea negotiation process. See Fed. R. Evid. 410. In the court's view, the fact that Ventura-Cruel confessed after the plea negotiations had concluded rendered the letter admissible.

The admission of Ventura-Cruel's confession in these circumstances was erroneous. In similar circumstances, the Ninth Circuit reversed a conviction because it deemed that admitting the defendant's confession was fundamentally unfair. See United States v. Escamilla, 975 F.2d 568 (9th Cir. 1992). In Escamilla, the defendant made incriminating statements as required by his plea agreement. Id. at 570. The plea agreement also required the defendant to take a polygraph test. Id. When the defendant failed the polygraph, the government withdrew from the agreement but used the defendant's incriminating statements against him at trial. Id. The court held that the trial court had erred by admitting the confession because "of the fundamental unfairness of allowing the government to keep the benefit of its bargain while denying [the defendant] his." Id. at 572. It concluded that the "only way to return the parties to the status quo ante is to bar the government from using [the defendant's] confession against him

-16-

at trial." Escamilla, 975 F.2d at 571; see Hawkins v. Hannigan, 185 F.3d 1146, 1156-57 (10th Cir. 1999) (holding that it was fundamentally unfair and violation of privilege against self-incrimination to introduce incriminating statements made by defendant in reliance on subsequently withdrawn plea bargain); Gunsby v. Wainwright, 596 F.2d 654, 656-658 (5th Cir. 1979) (holding that statement made pursuant to plea bargain which was later withdrawn by the government was inadmissible at subsequent trial because it violated self-incrimination privilege); People v. Jones, 331 N.W.2d 406, 408-10 (Mich. 1982) (vacating conviction because trial court improperly admitted statement made by defendant pursuant to subsequently withdrawn plea bargain); State v. Nelson, 33 P.3d 419, 422 (Wash. App. Ct. 2001) (holding that statement made by defendant in reliance on withdrawn plea agreement was inadmissible at subsequent trial); see also 5 LaFave, Israel, & King, Criminal Procedure § 21.5(f) at 220-21 (2d ed. 1999) (stating that where accepted plea is later overturned, incriminating statements made by defendant in reliance on plea agreement should be excluded from defendant's subsequent trial).[10]

We agree with the results reached in these cases, although in our view it is enough that the use of such statements

----

[10] We note that different considerations may come into play if the defendant withdraws his guilty plea or the defendant breaches the plea agreement. See 5 LaFave, Israel, & King, supra, at 221; see also United States v. Stirling, 571 F.2d 708, 732 (2d Cir. 1978).

-17-

is unfair under the circumstances, and we need not reach the constitutional grounds relied on by some of these cases. Ventura-Cruel believed, with reason, that the court had approved his plea and plea bargain. The plea agreement encouraged Ventura-Cruel to make incriminating statements in order to receive a shorter sentence. In light of these incentives, Ventura-Cruel offered such statements. He was then deprived of the benefit of his plea bargain but the government was permitted to use his statements made in reliance on the bargain against him at his subsequent trial. This was error. The parties should have been returned to their positions before the district court initially accepted Ventura-Cruel's guilty plea on February 7, 2000. Part of this return to the status quo ante should have included preventing the introduction of Ventura-Cruel's confession at trial.[11]

The government contends that, even if the confession was improperly admitted, it was only a harmless error because of the overwhelming evidence against Ventura-Cruel. For an erroneous evidentiary admission to be harmless, we must conclude that it was "highly probable" that the result would have been the same if the

---

[11] Ventura-Cruel's plea agreement did not contain a provision permitting the use of his admissions if the plea was subsequently overturned or one of the parties withdrew from the agreement. See United States v. Morsley, 64 F.3d 907, 918 (4th Cir. 1995) (allowing confession made by defendant to be admitted in subsequent trial where plea agreement stated that defendant's statements would be admissible if defendant withdrew from agreement).

disputed evidence had been excluded.[12]     See United States v. Vigneau, 187 F.3d 82, 86 (1st Cir. 1999).  The burden of persuasion rests with the government to demonstrate harmless error.  See United States v. Shea, 159 F.3d 37, 40 (1st Cir. 1998).

The government introduced Ventura-Cruel's confession as part of its case-in-chief through the testimony of his probation officer.  The government then highlighted the confession to the jury in its closing argument.  In referring to the letter, the government argued:

> There is no doubt that this is his signature
> . . . a letter . . . that speaks louder than
> any evidence in this case, a letter that way
> back in the year 2000 was drafted for only one
> purpose . . . to get a three level reduction
> for acceptance of responsibility . . . I accept
> that I did what I did.  I accept [that] I am
> guilty, I accept that this is what I have done,
> I did participate in this case.  Just take a
> look at the very first sentence.  The first
> thing I want to tell you is that I accept full
> responsibility for what I have done in this
> case.  I do not blame anyone. No one, ladies
> and gentleman, no one . . . I do not blame
> anyone but myself for my activity in this case.
> What is the case then that he participated in
> a conspiracy to possess in excess of 150
> kilograms.

---

[12] The harmless error standard for errors that are constitutional in nature is more stringent.  It requires that the error be deemed harmless beyond a reasonable doubt.  See United States v. Innamorati, 996 F.2d 456, 475 (1st Cir. 1993).  The government has failed to argue which standard applies here. However, even under the "highly probable" standard (which is more favorable to the government), the error, as discussed infra, cannot be deemed harmless.  See Vigneau, 187 F.3d at 86.

-19-

"Confessions are by nature highly probative and likely to be at the center of the jury's attention." United States v. Leon-Delfis, 203 F.3d 103, 112 (1st Cir. 2000). This is especially so where the government emphasizes the confession in its closing argument because these are "the last words spoken to the jury by the trial attorneys." United States v. Manning, 23 F.3d 570, 575 (1st Cir. 1994). Moreover, the thrust of the government's case, in addition to the improperly admitted confession, consisted of testimony from a paid informant and from a co-conspirator testifying pursuant to a plea agreement, in the hope of receiving a lighter sentence because of his cooperation. Ventura-Cruel argues that both of these witnesses were motivated to provide testimony favorable to the government and therefore their testimony raises questions of credibility which militate against finding an erroneous evidentiary admission harmless.

The government contends that a conviction may be "sufficient" even where the government relies on the testimony of co-conspirators. This argument misses the point. The question here is not whether a conviction based on the testimony of co-conspirators may be sustained as minimally sufficient. The question instead is whether, after a review of the entire record, we are convinced that it is "highly probable" that the jury would have reached the same conclusion without the confession. Vigneau, 187 F.3d at 86; Shea, 159 F.3d at 40. Where the government

-20-

claimed, in its closing argument, that the confession spoke "louder than any evidence in the case" and the other damaging evidence consisted of testimony from witnesses who may have had reason to fabricate or embellish their testimony, see Coppola v. Powell, 878 F.2d 1562, 1571 (1st Cir. 1989), we cannot conclude that the admission of Ventura-Cruel's confession was a harmless error.[13]

### III. Conclusion

For the reasons stated above, we **affirm** the district court's order rejecting Ventura-Cruel's guilty plea but **vacate** the convictions and remand for a new trial.

**So ordered**.

---

[13] Because of our determination that the erroneous evidentiary ruling entitles Ventura-Cruel to a new trial, we do not reach his final contention that the district court erroneously declined to provide a "multiple conspiracy" jury instruction.