**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

---

No. 03-2565

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID LEE BENNETT,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

---

Before

Boudin, Chief Judge,

Torruella and Howard, Circuit Judges.

---

Marie E. Hansen, with whom Willey Law Offices was on brief, for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.

---

July 7, 2004

---

**Per Curiam.** David Bennett appeals his convictions and ensuing sentence for (1) "travel[ing] in interstate or foreign commerce . . . with the intent to kill, injure, harass, or intimidate another person [with the result of] plac[ing] that person in reasonable fear of [death] or serious bodily injury . . . ."; and (2) "ship[ping] or transport[ing] in interstate or foreign commerce . . . any firearm or ammunition [after having been convicted in any court of a misdemeanor crime of domestic violence]."  18 U.S.C. §§ 2261A(1) and 922(g)(9).  We affirm.

## I.

Bennett was a frequent user of methamphetamine who often accused his wife of infidelity.  In January 2002, Bennett was convicted of a misdemeanor crime of domestic violence against his wife.  Following this incident, Bennett's wife –- fearing Bennett's release from prison –- gathered the children and fled from California to a relative's home in Maine.  On January 24, 2002, Bennett was released from prison on the condition that he have no contact with his wife.  Three days later, Bennett's wife phoned him to tell him that she and the children had left for (and arrived safely in) Maine.  During the course of this conversation, she provided Bennett with the address of her current location.  Bennett thereafter wired money so that his wife could rent an apartment.

On January 29th, Bennett's wife obtained a protection order from the Maine courts. In a subsequent telephone conversation -- Bennett apparently repeatedly phoned his wife -- Bennett's wife told Bennett to stay out of Maine because the marriage was finished. Despite this admonition, Bennett left California for Maine on or about February 8th after having told two friends that he planned to save his marriage. On the way, Bennett stopped in Utah to visit his father and acquired his father's handgun on the pretext that he needed protection. Bennett then traveled across the country with the gun. Bennett's wife was notified of these events by Bennett's sister.

On the night that Bennett arrived in Maine, state troopers observed him driving past the place where his wife formerly had been staying. The troopers stopped Bennett, served him with the Maine protection order, and told him to leave. Bennett's wife thereafter took the family to a local shelter. Bennett was arrested the next day a short distance from the children's school. Police located a gun and ammunition in the back of Bennett's truck.

Bennett was charged in a two-count indictment with interstate stalking ("Count One"), see 18 U.S.C. § 2261A(1), and possession of a firearm after having been convicted of a misdemeanor crime of domestic violence ("Count Two"), see id. § 922(g)(9). Bennett appeared in federal district court on December

6, 2002 ("the first Rule 11 proceeding"), apparently to plead guilty to Count One in exchange for the government's agreement to dismiss Count Two.  But, after Bennett disputed the requisite intent for Count One, the court rejected the proffered plea.  Four days later, before a different judge, Bennett pleaded guilty to Count Two ("the second Rule 11 proceeding") and waived his right to a jury trial on Count One.  Bennett subsequently was found guilty on Count One.  At sentencing, the court denied Bennett's oral motion to withdraw his guilty plea to Count Two.  The relevant particulars are set forth below.

### A.  The First Rule 11 Proceeding

On December 6, 2002, Bennett appeared before Judge Singal and proffered a guilty plea to Count One.  Trimmed of parts not here pertinent, the following colloquy occurred:

Court:      He's pleading guilty to Count One?

D. Counsel: And Count Two will be dismissed.

Court:      Is that what the agreement is?

Govt.:      Yes, Your Honor.  We had come here today with the expectation of the opposite, but moments before we entered court, [defense counsel] informed me that Mr. Bennett was willing to plead guilty to the more serious of the two.

. . .

Court:      Mr. Bennett, have you pleaded guilty to . . . Count One of the indictment because you are, in fact, actually guilty?

-4-

Bennett:     Yes.

Court:       Do you have any doubt about that?

Bennett:     Not -- not the harassment and intimidation. But to the killing, I -- I didn't intend to kill or injure anyone.

Court:       What you're telling me is you traveled in interstate commerce with intent to harass and intimidate your spouse?

Bennett:     Yes.

Court:       But you didn't go there with the intent to kill or injure; is that correct?

Bennett:     No.

. . .

Court:       Ms. Malone [the prosecutor], I note that the statute involved here, Section 2261[A], deals with the -- has the wording of, quote, with the intent to kill, injure, harass, or intimidate . . . [but] your indictment reads it in the conjunctive.

Govt.:       Yes, Your Honor. It's my understanding of the law that the government is permitted to plead in the conjunctive and prove in the disjunctive. . . .

Court:       I agree . . . . Do you disagree, [defense counsel]?

D. Counsel: I do not, Your Honor.

. . .

Court:       All right. Mr. Bennett, you told me that you heard all of their

evidence.  Is there anything that Ms. Malone indicated that you disagree with?

. . .

Bennett:    I disagree with saying that my wife and I -- we had a little confrontation on the phone for about a minute, and that was it. I changed the subject.  And they knew I was coming to Maine.

. . .

Court:      All right.  Did you, in fact, cross state lines with the intent to harass and intimidate your spouse?

Bennett:    Yes.

Court:      Do you have any doubt about that?

Bennett:    Truthfully, I didn't plan to harm anyone, Your Honor.  I had pure love in my heart.

Court:      You had what?

Bennett:    I had pure love in my heart for my family.

Court:      All right.  So what you're telling me is that you didn't travel to cause any harm –

Bennett:    No.

Court:      -- in any way?

Bennett:    No, I did not.

Court:      All right.

Bennett:    I didn't.

Court:      Thank you.  I'm not going to accept this plea.  He doesn't –

Bennett:     I didn't want to hurt anyone.

Court:       That's -- don't say any more.  Ms.
             Malone, I can't accept this plea.

## B.  The Second Rule 11 Proceeding

Four days later, on December 10, 2002, Bennett appeared before Judge Hornby both to plead guilty to Count Two and to waive his right to a jury trial on Count One.  Trimmed of parts not here pertinent, the following colloquy occurred:

Court:       Have you used any drug or alcohol
             in the last 24 hours?

Bennett:     No.

Court:       Do you feel you understand what's
             happening in these proceedings?

Bennett:     Yes, I do.

Court:       These two lawyers have just told
             me that you want to change your
             plea to Count Two of the
             indictment, the indictment
             concerning possession of the
             weapon, is that correct?

Bennett:     Yes, it is.

.  .  .

Clerk:       Sir, how do you now plead to Count
             Two of the indictment, guilty or
             not guilty?

Bennett:     I plead guilty.

.  .  .

Court:       First of all, sir, have you
             pleaded guilty to Count Two
             because you are actually guilty of
             that crime?

Bennett:    Yes.

. . .

Court:      Mr. Bennett, did you receive a copy of the indictment?

Bennett:    Yes, I did.

Court:      Did you have enough time to discuss the charges with your lawyer?

Bennett:    Yes.

Court:      Did he explain to you the elements . . . as well as the penalties . . .?

Bennett:    Yes.

Court:      Mr. Bennett, you're charged in a two-count indictment. You're entering a plea at this time only to Count Two, so that's the one I'm going to go over with you. [explains the charge] Do you understand this charge?

Bennett:    Yes.

Court:      [explains the penalties] Do you understand all of these penalties?

Bennett:    Yes, I do.

Court:      Do you understand that you have the right to continue to plead not guilty to this charge?

Bennett:    Yes.

Court:      [explains trial procedure] If I accept your guilty plea, you will have given up your right to a trial and the other rights that I've just described to you, and there will be no trial on this

count of the indictment. Do you understand?

Bennett:     Yes.

Court:       I will proceed to enter a judgment of guilty on this charge, and I will sentence you on the basis of your guilty plea on this charge. And if all of that happens, you will have virtually no right of appeal from your conviction on Count Two. Do you understand?

Bennett:     Yes, I do.

. . .

Court:       In light of all that I've just explained to you, do you still choose to plead guilty to Count Two?

Bennett:     Yes, I do.

[recitation of evidence by the government]

Court:       Mr. Bennett, did you hear the prosecutor . . . describe the evidence that he would produce if Count Two did proceed to trial?

Bennett:     Yes.

Court:       Is there anything he told me that you disagree with?

Bennett:     No.

Court:       Is the information he gave me true to your personal knowledge?

Bennett:     Yes, it is.

Court:       Very well. I find that there is a factual basis for the guilty plea to Count Two of the indictment. Mr. Bennett, has anybody

-9-

                    threatened you or tried to force
                    you to plead guilty?

          Bennett:   No.

          Court:     Do you have any plea agreement,
                     written or verbal, with the
                     prosecutor or any other agreement
                     about the sentence or about any of
                     the other charges here?

          Bennett:   No.

          Court:     Do you understand, then, that so
                     far as sentencing is concerned on
                     Count Two . . . the authority to
                     determine the sentence stays with
                     me as the Judge? And . . . if the
                     sentence turns out to be more
                     severe than you hoped for, you'll
                     have no right to withdraw your
                     guilty plea.  You'll still be
                     bound by it.  Do you understand?

          Bennett:   Yes, I do.

          . . .

          Court:     Has anybody made any promises to
                     you to get you to plead guilty to
                     Count Two?

          Bennett:   No.

Judge Hornby thereafter accepted Bennett's guilty plea to Count Two and granted his request to waive trial by jury on Count One.

## C.  Subsequent Proceedings

On December 16, 2002, a bench trial was held before Judge Hornby on Count One (the interstate-stalking charge).  Judge Hornby

-10-

found Bennett guilty, explaining the requisite intent element as follows:

> There are four essential elements to be addressed, as has been recognized . . . . The real heart of the case, as the lawyers have recognized, is the intent question, and the requirement of the statute is that . . . the defendant traveled in interstate commerce with the intent to kill, injure, harass, or intimidate another person. . . . I don't find beyond a reasonable doubt that the defendant intended to kill or injure . . . but . . . I do find beyond a reasonable doubt that he intended to harass her, and that the travel in interstate commerce was with that intent . . . . Her acceptance of money from him, coming from a community property state, like California, and giving him an address to send it do not contradict the foregoing.

At the sentencing hearing on November 5, 2003, Bennett's new counsel orally moved to withdraw Bennett's guilty plea to Count Two (the firearms charge):

> [When my client appeared before Judge Singal, he] agreed that . . . the harassment or intimidation portion of the statute was what he could agree to for factual recitation purposes, but not anything dealing with intent to harm or injure . . . . Judge Singal rejected the plea offer. And ultimately . . . the matter was before you [Judge Hornby] for trial on both counts prior to the trial. Apparently a plea on Count Two, the gun charge, was tendered to you, and accepted by you, . . . and you [later] found him guilty on Count One with specific findings that it was a harassment or intimidation activity. Nothing was involved, I understand, on your findings dealing with killing or injuring anyone, [which was] exactly consistent with what [the defendant] told Judge Singal. I only recently had this transcript of the Rule 11 proceedings . . . . I believe that the reason

for the withdrawal of plea to Count Two is important because factually, what the trial did was confirm the defendant's plea to Count One before Judge Singal on the mens rea issue. My reading of the transcript before Judge Singal . . . was that he apparently did not believe that there was an adequate mens rea . . . but a clear reading of it suggests that . . . my client did accept at that time the harassment, intimidation portion of the statute, which was adequate for a plea.

Judge Hornby denied the motion, explaining his ruling as follows:

The defendant has pleaded guilty to Count Two in front of me, [and] there's no showing that the guilty plea was anything other than knowing, voluntary, intentional, with a factual basis for the plea. There's no suggestion of innocence, there's no reason to grant a motion to withdraw that guilty plea. If there was some problem with the failed attempt to plead guilty to Count One before Judge Singal, and if there was some agreement that was beneficial to the defendant at that time, the proper remedy was to try to resurrect that plea and to persuade Judge Singal to accept the plea . . . . That did not happen. So what I have here is a valid guilty plea to Count Two without any grounds to withdraw it.

Bennet thereafter was sentenced to 60 months' imprisonment on Count One with a concurrent term of 96 months' imprisonment on Count Two. This appeal followed.

## II.

We are presented with seven issues on appeal: (1) "whether [Judge Singal] erred as a matter of law in rejecting [the defendant's] plea to Count One on December 6, 2002"; (2) "whether

-12-

the U.S. Attorney's Office breached the plea agreement"; (3) "whether [Judge Hornby] erred as a matter of law in accepting the plea to Count Two . . . in violation of the plea agreement"; (4) "whether [Judge Hornby] erred as a matter of law in finding [the defendant] guilty . . . of Count One"; (5) whether [Judge Hornby] erred as a matter of law in the sentencing of [the defendant]"; (6) "whether [Judge Hornby] erred as a matter of law in denying [the defendant's] request to withdraw his guilty plea to Count Two; and (7) "whether [the defendant] was denied effective assistance of counsel."  We handle each in the order previewed.

First, regarding Judge Singal's rejection of Bennett's proffered guilty plea to Count One, we note at the outset that "[i]t is well settled that a defendant does not have an absolute right to plead guilty." United States v. Ventura-Cruel, 356 F.3d 55, 59-60 (1st Cir. 2003) (citing Santobello v. New York, 404 U.S. 257, 262 (1971)).  Indeed, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."  Fed. R. Crim. P. 11(b)(3).  Here, Judge Singal supportably determined that a factual basis for the plea did not exist.[1]  Having already denied an intent to kill or injure, the

---

[1]The relevant criminal statute criminalizes "travel[ing] in interstate or foreign commerce . . . with the intent to kill, injure, harass, or intimidate another person" when such travel places that person in reasonable fear of death or serious bodily injury.  18 U.S.C. § 2261(A) (emphasis added).

following exchange suggests that Bennett also denied having had an intent to harass or intimidate:

| | |
|---|---|
| Court: | Do you have any doubt about [your intent to harass and intimidate]? |
| Bennett: | Truthfully, I didn't plan to harm anyone, Your Honor.  I had pure love in my heart. |
| Court: | You had what? |
| Bennett: | I had pure love in my heart for my family. |
| Court: | All right.  So what you're telling me is that you didn't travel to cause any harm – |
| Bennett: | No. |
| Court: | –– in any way? |
| Bennett: | No, I did not. |
| Court: | All right. |
| Bennett: | I didn't. |
| Court: | Thank you.  I'm not going to accept this plea.  He doesn't – |
| Bennett: | I didn't want to hurt anyone. |

Bennett now argues that his denial of an intent to harm should be construed only as a denial of an intent to kill or injure and not as a denial of an intent to intimidate or harass.[2]  We reject this argument.  The definition of harm is not confined to adverse physical effects such as physical injury or death; there is

_____

[2]Trial counsel neither objected nor proffered a similar interpretative argument following Judge Singal's rejection of the plea.

-14-

a mental component as well. See Webster's Third New International Dictionary 1034 (1993) (defining "harm" as "physical or mental damage"). Bennett's denial of any intention to harm together with his assertion of "pure love" suggested a denial of all culpable intent, especially since these responses came immediately after having been asked specifically about his intent to harass or intimidate. Accordingly, we cannot say that Judge Singal committed reversible error in rejecting the plea. See Santobello, 404 U.S. at 262 ("A court may reject a plea in exercise of sound judicial discretion."); see also Ventura-Cruel 356 F.3d at 60 (quoting with approval Rule 11's historical advisory-committee notes, which state that the "normal consequences of a determination that there is not a factual basis for the plea would be for the court to set aside the plea and enter a plea of not guilty").

Bennett's second argument -- that the United States Attorney's Office breached its plea agreement -- is without merit. Because "[e]very plea agreement is subject to court approval," United States v. Lopez, 944 F.2d 33, 36 (1st Cir. 1991), no rights remained under the proffered plea agreement once Judge Singal rejected Bennett's guilty plea to Count One. See id. at 37 ("Absent a showing that the government gained unfair advantage as a result of the agreement . . ., once a plea agreement has been rejected by the court the government is under no obligation to abide by its terms." (citations omitted)). No unfair advantage has

-15-

been shown here.  Indeed, in the second Rule 11 proceeding, Bennett himself made clear that, in pleading guilty to Count Two, he was not relying on -- and that, in fact, there did not exist -- a plea agreement with the government.[3]

Similarly without merit is Bennett's argument that Judge Hornby erred in accepting his guilty plea to Count Two.  Resting on our discussion of the preceding two issues as well as the relevant colloquy, see supra, we are convinced that no legitimate question has been raised about any Rule 11 or related concern.

Bennett spends but one short paragraph elaborating his next argument -- that Judge Hornby "erred as matter of law in finding [him] guilty . . . of Count One."  There is a "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  In any event, as best we can tell, Bennett is arguing that Judge Hornby's findings are inconsistent with those of Judge Singal.  But that argument incorrectly is premised on the notion that Judge Singal (in the first Rule 11 proceeding) "found that the elements of the [criminal] statute were not met."  Judge Singal did not so find; rather, he found that Bennett had not admitted such elements.

_____

[3]Specifically, Judge Hornby asked Bennett whether he had "any plea agreement, written or verbal, with the prosecutor or any other agreement about the sentence or about any of the other charges here" and whether "anybody [had] made any promises to [him] to get [him] to plead guilty to Count Two." (emphasis added).  Bennett answered "no" to both questions.

-16-

Bennett's Eighth Amendment-based sentencing argument is premised on "the error of the district court in not accepting the plea to Count One, the government's breach of the plea agreement, the district court's error in accepting the plea to Count Two and in finding the defendant guilty on Count One." Because we have rejected each and every premise on which Bennett relies, we find no merit to this argument, which was in any event not raised below. See United States v. McCormack, --- F.3d ---, 2004 WL 1244467 at *6 (1st Cir. 2004) (noting that a sentencing argument not raised below is reviewed only for plain error). Bennett also argues that he should have been (1) awarded an acceptance-of-responsibility adjustment because he "attempt[ed] to accept responsibility for Count One . . . [and] did, in fact, accept responsibility by pleading [guilty] to Count Two"; and (2) granted a downward departure on the grounds of "the totality of the circumstances . . ., diminished capacity, hyper-sexual and hyper-religious behavior, and fatigue." Both of these arguments were presented to -- and rejected by -- Judge Hornby at sentencing.[4]

---

[4]Regarding the alleged acceptance of responsibility with respect to Count One, Judge Hornby recited the relevant portions of the first Rule 11 colloquy and then concluded as follows: "Clearly, [Judge Singal] couldn't accept the plea. The defendant had denied responsibility for having any kind of intent, even to harass or intimidate his wife; he had nothing but pure love in his heart. He did not accept responsibility then. He went to trial as was his right, put the government to its proof." With respect to Count Two, Judge Hornby determined that "the two counts have to be ultimately considered together [and], while it's true that he did plead guilty to Count Two, . . . given the overall offense conduct that I'm analyzing under the guidelines, I do not find acceptance

We cannot say that Judge Hornby clearly erred in refusing to adjust the sentence based on acceptance of responsibility, see United States v. Muriel, 111 F.3d 975, 982 (1st Cir. 1997) ("A defendant who pleads guilty is not entitled to a downward adjustment for acceptance of responsibility as a matter of right[;] . . . [w]hether a defendant has accepted responsibility for the offense is a fact-dominated issue, and therefore we review the district judge's ruling for clear error." (citations omitted)), and we have no jurisdiction to review his discretionary decision not to depart, see United States v. Morrison, 46 F.3d 127, 130 (1st Cir. 1995) (noting that, because a "refusal to depart cannot constitute an incorrect application of the Guidelines, . . . no appeal lies from a discretionary refusal to depart . . . [unless] the decision not to depart is based on the sentencing court's assessment of its lack of authority or power to depart" (citations and quotation marks omitted)).

Sixth, there was neither legal error nor a "demonstrable abuse of discretion" in the denial of Bennett's motion to withdraw

---

of responsibility." See U.S.S.G. §3E1.1 (2002).

Regarding the departure issues, Judge Hornby concluded that (1) "the significantly reduced mental capacity was caused by [the voluntary use of drugs and other intoxicants]"; (2) "the facts and circumstances of the offense indicate a need to protect the public"; (3) "the[se] circumstances . . . counsel against granting a departure here [on the discouraged ground of] mental and emotional conditions"; and (4) "under . . . the general catch-all provision, I likewise find no reason to depart here, even if I had the authority, [because] the guideline range is very appropriate given the circumstances of what the defendant has done." See id. §§5H1.3 and 5K2.13.

-18-

his guilty plea to Count Two.  See United States v. Martinez-Molina, 64 F.3d 719, 732 (1st Cir. 1995).  Insofar as Bennett's argument in this regard is based on the other issues raised in his appeal, we have nothing to add other than to note that we are in complete agreement with Judge Hornby's careful analysis on this point.  See supra.

Finally, this court has held "with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct appeal of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court."  United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993) (collecting cases).  Absent the rare occasion where, on direct appeal, the record is sufficiently clear to allow reasoned consideration of the ineffective-assistance claim, see, e.g., United States v. Natanel, 938 F.2d 302 (1st Cir. 1991), "[t]he preferable vehicle for such [a] claim[] is a collateral proceeding under 28 U.S.C. § 2255, in which the parties and the district court can address factual matters relevant to the issue," United States v. Genao, 281 F.3d 305, 313 (1st Cir. 2002) (citation omitted).  Bennett's ineffective-assistance claim does

not fall within the narrow exception;[5] accordingly, he must pursue

it in the traditional fashion.

**Affirmed.**

---

[5]Among other problems, Bennett points to former counsel's "failure to investigate all avenues proposed by the defendant" but then neglects to identify any evidence in the record indicating what, in fact, defendant had proposed or what, in fact, former counsel had considered (and, perhaps, rejected).