# United States Court of Appeals
## For the First Circuit

No. 06-1126

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ SKERRET-ORTEGA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Selya, Senior Circuit Judge.

Rafael F. Castro-Lang, for appellant.
Ernesto López-Soltero, Assistant United States Attorney, with whom Rosa E. Rodríquez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Germán A. Rieckehoff, Assistant United States Attorney, were on brief for appellee.

June 13, 2008

**TORRUELLA, Circuit Judge.** José Skerret-Ortega ("Skerret") was indicted along with six co-defendants for conspiracy to possess with the intent to distribute in excess of five kilograms of cocaine, one kilogram of heroin, fifty grams of cocaine base (crack), and a detectable amount of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Skerret attempted to enter a guilty plea twice; the district court rejected his pleas, and a jury convicted him. On appeal, Skerret argues that the district court improperly rejected his guilty plea, improperly admitted certain evidence, that the Government made improper references during closing arguments, and that he had ineffective assistance of counsel. After careful consideration, we affirm the district court's denial of Skerret's attempted guilty pleas and affirm the conviction.

## I. Background

Between 1995 and 2002, Skerret was part of a group of individuals who controlled a major drug operation out of the Los Alamos housing projects in Guaynabo, Puerto Rico. Their drug trade included cocaine, crack, heroin, and marijuana. Each drug point in Los Alamos had an owner who, in turn, employed sellers. The Government presented evidence that Skerret operated a marijuana drug point; rented a cocaine drug point from José Rivera Santiago; helped process heroin for drug point owner Danny Camilla; and was an enforcer for drug point operators at the housing project between

-2-

1997 and 2003. In addition to selling for others at different points during those years, Skerret sold his own "brand" of marijuana called "black dot."

Skerret sold about one kilogram of cocaine per month from his rented drug point. In 1998, Skerret also worked for another drug point owner, and he processed "green-bag" heroin for him. Skerret owned a drug point from 1999 to 2003. He also employed sellers and runners to help with his drug ring.

Skerret carried and used a .357 Magnum revolver and 9 mm Luger pistol that belonged to Camilla. Skerret also had access to other semi-automatic weapons. Videotapes in evidence showed Skerret involved in the weapons and drug trade at Los Alamos on numerous occasions. Rivera Santiago and Sujeilly Castellano Castro (a former resident of Los Alamos who regularly witnessed drug transactions near her apartment) cooperated with the Government and provided testimony about Skerret's involvement in drug trafficking at Los Alamos. Skerret had lookout points for detecting police in the area, used private channel walkie-talkie radios, and had methods for getting rid of drugs quickly when the need arose. A watchman was on duty twenty-four hours a day at the entrance of the housing project; the watchman reported on every vehicle and the number of occupants as they entered Los Alamos.

Skerret was arrested, and on October 22, 2003, he was indicted, along with six other co-defendants, for violating 21

U.S.C. §§ 841(a)(1) and (b)(1)(A) for possession with intent to distribute five kilograms or more of cocaine, fifty grams or more of crack, one kilogram or more of heroin, and a detectable amount of marijuana. Skerret originally pleaded not guilty, and on August 15, 2004, he rejected a plea agreement. On September 12, 2005, both before and after the jury was selected, Skerret attempted to change his plea to guilty. The district court, after colloquies, rejected both requests. The jury convicted Skerret on September 14, 2005, and on December 14, 2005, the district court sentenced him to 360 months' imprisonment and five years' supervised release. He now appeals.

## II. Discussion

Skerret challenges the district court's rejection of his guilty pleas, the admission of evidence, and some of the Government's statements during closing arguments. We do not find merit in any of these claims and address them in turn below. He also alleges that he suffered from ineffective assistance of counsel. Because of an insufficiently developed evidentiary record, we will not review Skerret's ineffective assistance of counsel claim; the proper forum is a collateral proceeding under 28 U.S.C. § 2255. See United States v. Woods, 210 F.3d 70, 74 (1st Cir. 2000).

## A. Standard of Review

Skerret failed to object below to the district court's denial of his change of plea requests, to the admission of certain evidence, and to impugned closing arguments. We, therefore, review his claims for plain error. See United States v. García-Carrasquillo, 483 F.3d 124, 132 (1st Cir. 2007). Review for plain error encompasses a well-known four-part test. We must determine whether (1) an error occurred (2) that was clear or obvious (3) which affected the defendant's substantial rights while also (4) seriously impairing the fairness, integrity or public reputation of judicial proceedings. See United States v. Duval, 496 F.3d 64, 84 (1st Cir. 2007).

## B. Guilty Pleas

Skerret first attempted to enter a guilty plea before the jury was empaneled; he attempted a second time immediately thereafter. Both times, the district court rejected his requests. Skerret argues that these refusals resulted in a longer term of imprisonment than the sentence he would have received under a plea.

During Skerret's first attempted change of plea hearing, the district court asked Skerret why he was pleading guilty. He said, "well, because I don't know. I mean, the lawyer hasn't told me." The district court then inquired whether Skerret felt forced to plead guilty; and he said: "[Y]es." Skerret's attorney then

accepted the court's decision that the case had to go to trial.[1] Skerret's acknowledgment that he felt forced to plead guilty is reason enough for the district court to reject his plea; in fact, it is required. <u>See</u> Fed. R. Crim. P. 11(b)(2). District courts must take steps to ensure that defendants are not coerced into pleading guilty.

During Skerret's second attempt to enter a guilty plea, the following colloquy took place:

> THE COURT: Well, what made you change your view as to whether you were going to plead or not? Because this morning you seemed not ready to plead. And, all of a sudden, we selected a jury and now you are ready to plead. Why the change in less than two or three hours?
>
> SKERRET: Well, with all due respect, Your Honor, I just want this not to be prolonged any more and just to get it over with as soon as possible.
>
> THE COURT: But prolong what?
>
> SKERRET: Well, the process and that I am a head of a household and I would like to be given the opportunity to be with my children.
>
> THE COURT: How do you know that is going to be better that way?
>
> SKERRET: I don't know.
>
> THE COURT: Counsel, frankly, I don't know what to tell you. I do think that the easy way out would be to take his plea. But it seems to me, on the basis of my experience, that this man is not the kind of person that

---

[1] The defendant is represented by different counsel on appeal.

-6-

> approaches a plea situation, a straight plea, without a plea agreement with full knowledge of consequences.  It seems to me - I don't know what is in his mind, I don't know.  I can't put a finger on it.

The district court then denied Skerret's request to enter a straight plea.  Skerret argues that the colloquy demonstrates that the district court failed to articulate any sound reason for rejecting his plea attempt.

Skerret does not have an absolute right to plead guilty, and it was within the district court's discretion to reject his pleas.  See Santobello v. New York, 404 U.S. 257, 262 (1971) (citing Lynch v. Overholser, 369 U.S. 705, 719 (1962) and Fed. R. Crim. P. 11); In re Arvedon, 523 F.2d 914, 916 (1st Cir. 1975).  The district court must ensure that the defendant is provided with certain safeguards intended to assure that his rights are respected.  See Santobello, 404 U.S. at 262.  Federal Rule of Criminal Procedure 11 requires the district court to address the defendant personally to assure that, inter alia, he understands the charge against him, the possible punishment, his right to an attorney, his right to plead not guilty, his right to a jury trial, and that his guilty plea, among other things, waives his right to a trial.  See Fed. R. Crim P. 11(b)(1); United States v. Ventura-Cruel, 356 F.3d 55, 59 (1st Cir. 2003).  The district court must also ensure that the defendant's plea is voluntary and not the

result of "force, threats, or promises."  Fed. R. Crim. P. 11(b)(2); see also Ventura-Cruel, 356 F.3d at 59.

The district court is also required to ascertain whether there is a factual basis for the defendant's guilty plea. See Fed. R. Crim. P. 11(b)(3).  "The purpose of this requirement is to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'"  Ventura-Cruel, 356 F.3d at 59-60 (citation omitted). Accordingly, district courts must have "a reasoned basis to believe that the defendant actually committed the crime to which he is admitting guilt." United States v. Matos-Quiñones, 456 F.3d 14, 21 (1st Cir. 2006) (citing United States v. Cheal, 389 F.3d 35, 41 (1st Cir. 2004)).  Skerret denied any responsibility for the crimes for which he was charged.  When the district court asked defense counsel why the appellant had changed his mind a few hours after the first attempt to plead guilty, counsel said that Skerret "has always denied participation" in the charged crimes.  Skerret did not deny his attorney's statement.  Because Skerret denied participation in the charged offenses, the district court would have been unable to glean the relevant facts -- even by accepting the prosecution's version of the evidence.  See United States v. Gandía-Maysonet, 227 F.3d 1, 6 (1st Cir. 2000).  The district court did not err when it refused to accept Skerret's plea.

## C.  Admission of Evidence and Statements During Trial

### 1.  Documentary Evidence

Skerret argues that the Government presented documents that should not have been allowed into evidence and were then impermissibly used during closing arguments by the government.  The first document was the indictment, and the second was Rivera Santiago's sealed motion requesting a downward departure pursuant to U.S.S.G. § 5K1.1.  Skerret did not object below to either submission, accordingly, we review for plain error.

The Government asserts that the indictment was introduced into evidence, not as evidence against Skerret, but to offer some background on Rivera Santiago, whose cooperation in the case earned him a reduced sentence.  We agree.  It is clear from the trial record that the Government's reference to the indictment, and the reason for presenting it to the jury, was to show the jury what Rivera Santiago "did and what he is answering for."  Since the indictment was not introduced into evidence to be considered against the defendant, subject to a proper instruction, giving the indictment to the jury for use during deliberations was well within the trial court's discretion.  See United States v. McFarlane, 491 F.3d 53, 60 (1st Cir. 2007) (quoting United States v. Medina, 761 F.2d 12, 21-22 (1st Cir. 1985)).

The district court properly instructed the jury regarding the indictment.  The district court told the jury:  "You are going

to have a copy of the indictment for the simple reason that you have to follow the written word of the charge to figure out whether it is something that helps you in conducting your deliberations[,] but the indictment as such is not evidence of anything." The very last instruction the jury heard before deliberating was: "You will get a copy of the indictment. As I said before, it serves as the guideline, if you will, of what it is that the government charged with the understanding that it is not evidence of guilt or anything else." The district court did not err.

Likewise, it was not plain error for the court to admit the § 5K1.1 motion. The purpose of the § 5K.1 motion was to show the jury that Rivera Santiago had benefitted from cooperating with the Government and that he had motivation to testify truthfully. The motion also related to Skerret's main theory, which was that Rivera Santiago was lying to obtain leniency. We have held that under these types of circumstances, may be appropriate to introduce this kind of evidence. See United States v. Hansen, 434 F.3d 92, 101-102 (1st Cir. 2006), cert. denied, 127 S. Ct. 203 (2006) ("'[A] prosecutor properly may admit a witness's plea agreement into evidence, discuss the details of the plea during closing arguments, and comment upon a witness's incentive to testify truthfully.'" (quoting United States v. Bey, 188 F.3d 1, 7 (1st Cir. 1999)); see also United States v. Page, 521 F.3d 101, 107 (1st Cir. 2008). In the absence of an objection, the district court cannot be faulted

for admitting the indictment and the Government's § 5K1.1 motion into evidence.  The Government had a legitimate reason for admitting the evidence, and Skerret's attempt to distort the Government's motive fails.[2]  There was no plain error.

## 2.  Statements During Closing Arguments

Skerret alleges that the Government made improper statements in its closing.  The Government stated:

> And when you decide this matter as judges, remember that you will live with the decision of course.  You will live with the honest decision that you put a criminal behind bars. Not just left out in the street, another criminal to continue selling drugs next to the kids because you saw they sold regardless of the kids, not even caring for any of those kids, one of them was even giving money to a little child to take God knows where.  So when you live with your conscience you will live with your knowledge as judges of the fact you did justice. . . .

The Government also stated:  "[Castellano Castro] is an innocent victim, living in one of our housing projects and having to endure the trafficking by these individuals."

In the past, we have admonished the Government for making statements "'calculated to inflame the passions or prejudices of the jury,'" United States v. Nelson-Rodríguez, 319 F.3d 12, 39 (1st Cir. 2003) (citation omitted), in an attempt to obtain a conviction.  See Arrieta-Agressot v. United States, 3 F.3d 525, 527

---

[2]  Since we hold that it was not plain error to admit the evidence, we need not consider Skerret's claim that it was improper for the Government to refer to the evidence during closing arguments.

-11-

(1st Cir. 1993) ("We think it is crystal clear that inflammatory language of this ilk falls well outside the bounds of permissible argument."). We continue to believe that:

> Cases are to be decided by a dispassionate review of the evidence admitted in court. There should be no suggestion that a jury has a duty to decide one way or the other; such an appeal is designed to stir passion and can only distract a jury from its actual duty: impartiality.

United States v. Mendelbaum, 803 F.2d 42, 44 (1st Cir. 1986).

The statements at issue, however, were made during the Government's rebuttal in direct response to Skerret's statements. Skerret's counsel made the following remarks in his closing arguments: "You are going to live with your decision the rest of your life. . . . Are you really going to rest the rest of your lives with the decision you are about to make on a criminal? On a woman that cannot remember the dates?" The Government's response to statements made by defendant's counsel cannot and should not be viewed the same way as statements made by the Government without provocation. "In [the] context [of responding to defendant's arguments], we 'typically cede prosecutors some latitude in responding to defense counsel. . . .'" Hansen, 434 F.3d at 102 (quoting United States v. Pérez-Ruiz, 353 F.3d 1, 10 (1st Cir. 2003)). While "prosecutor[s] should refrain from arguments [predicting] the consequences of the jury's verdict," United States v. Whiting, 28 F.3d 1296, 1302 (1st Cir. 1994) (citation omitted)

-12-

(second alteration in original), the statement here was simply a response to provocative statements made by Skerret's counsel. Admitting the statement under the circumstances we have before us was not plain error.

### III. <u>Conclusion</u>

The district court's refusal to accept of Skerret's attempted guilty pleas is affirmed, and Skerret's conviction is affirmed.

**<u>Affirmed</u>**.